United States Court of Appeals,

Fifth Circuit.

No. 94-10795

Summary Calendar.

Don W. BURFIELD, Plaintiff-Appellant,

v.

BROWN, MOORE & FLINT, INC., Defendant-Appellee.

May 10, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:

Don W. Burfield filed a civil action against Brown, Moore & Flint, Inc. ("BM & F"), on August 18, 1993, alleging that he was the victim of employment discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Texas Labor Code § 451.001.[1] On July 26, 1994, the district court granted summary judgment in favor of BM & F on the following grounds: (1) the applicable statute of limitations had run before Burfield filed his ADEA complaint with the EEOC,[2] (2) Burfield's ADA claim was barred as a matter of law because it arose prior to

_____

[1]Texas Revised Civil Statutes article 8307c was repealed and recodified in §§ 451.001-.003 of the Texas Labor Code, effective September 1, 1993. This recodification did not change the substantive law.

[2]Burfield does not appeal the granting of summary judgment on this matter.

1

the Act's effective date, and (3) Burfield failed to establish the requisite causal connection between his workers' compensation claim and his discharge from employment. We affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BM & F is a food brokerage company that markets dry and frozen foods to retail operations such as grocery and convenience stores. Burfield was hired by BM & F on February 22, 1988 as a retail sales representative, and he held this position throughout his employment with the company. Burfield was born on August 29, 1945, and he was over forty years of age at the time his employment with BM & F began. Burfield has a Bachelor of Arts degree in political science and public administration, along with a minor in business administration.

According to job descriptions prepared by BM & F, most essential functions performed by a retail sales representative consist of "getting product(s) aligned on grocery store shel(ves) according to stocking plan or manufacturer's requirements." This job function is referred to as "merchandising", and it involves lifting products up on to grocery store shelves, including overhead lifting. Another essential function of a retail sales representative is the selling of extra merchandise directly to the retail store, a function referred to as "surveying."

On March 20, 1991, while working as a retail sales representative at a Skaggs grocery store in Dallas, Texas, Burfield allegedly sustained a job-related injury when he was hit in the

2

head and neck area by a box containing multi-roll packages of toilet paper that was thrown by an employee of Skaggs. Burfield completed an accident report for Skaggs and allegedly advised his supervisor at BM & F, Ronald A. Campbell, the Zone Manager, of the incident. Burfield reports that he asked Campbell if he should file a workers' compensation claim, to which Campbell allegedly replied, "Hell, no," and directed Burfield to file the claim with Skaggs.

Burfield subsequently saw Dr. Scott L. Blumenthal, M.D. for this injury. He was referred to Dr. Blumenthal by his attorney, John Wall, Jr. Burfield returned to full-duty work the day following the incident, but he continued to be treated by Dr. Blumenthal and his associate, Dr. Kevin Gill, M.D., with medications, physical therapy sessions and personal fitness training at a health club.

Burfield received no response following his submission of an accident report with Skaggs, and he subsequently filed a workers' compensation claim with BM & F in April of 1991, three to four weeks after the injury occurred. Burfield claims that upon approaching Leonard Bara, the controller at BM & F, about filing the workers' compensation claim, Bara appeared angry and handed Burfield the claim form in a brusk manner. According to Burfield, Bara said that he hoped they did not get in trouble for filing this claim, and a few weeks later, Bara stated to Burfield, "Thanks to you our rates are about to double."

BM & F then submitted an "Employer's First Report of Injury or

3

Illness" to the Texas Worker's Compensation Commission on April 24, 1991. Thereafter, BM & F's workers' compensation insurance carrier, Northbrook Insurance Company, paid all expenses incurred by Burfield for his medical treatment.[3]

Meanwhile, Burfield continued to work for BM & F while undergoing physical therapy and training sessions prescribed by his physician. In May or June of 1992, Burfield was transferred to work under Jim Tweet in the frozen and perishable food division of BM & F, still in his capacity as a retail sales representative. Burfield claims that he advised Tweet that he would be attending physical therapy and training sessions. Burfield continued to perform his full duties as a retail sales representative under Tweet without incident until the summer of 1992.

In the spring of 1992, Skaggs was purchased by Albertsons. As a result, the Skaggs account at BM & F was eliminated and the retail sales representatives who had been servicing Skaggs (Burfield and Debbie Kennemer) were reassigned to the Albertsons account. Since Albertsons performed all purchasing at the corporate level and did not allow its stores to buy products directly from retail sales representatives, there was no survey work to be done at Albertsons and merchandising then accounted for an even larger portion of Burfield's duties.

---

[3]Burfield later settled with Northbrook and received a lump sum of $6,000.00, medical benefits for life, and a promise of impairment income equivalent to 66% of his salary if he should become unable in the future to perform his job at BM & F due to his injury. In addition to being compensated by Northbrook, Burfield initiated litigation against Skaggs.

Effective June 1, 1992, BM & F restructured its operations by combining the frozen food and dry grocery divisions and, as a result, Burfield was again under the supervision of Ron Campbell. On this same day, Campbell instructed Burfield, along with other employees, to construct a large paper display at Albertsons. Burfield informed Campbell that he would not be able to perform this task because of his medical restrictions. Campbell was at this time reportedly unaware of Burfield's restrictions. When he asked Burfield for more information, Burfield replied "We'll talk about this at some other time." Burfield does not believe that he and Campbell ever "finished the conversation." Burfield claims that Campbell continued to ask him to perform tasks which violated his restrictions and caused him pain.

Burfield continued to work in his capacity as a retail sales representative throughout the month of June 1992 without incident. Burfield alleges, however, that on June 29, 1992, he experienced neck pain while shelving baby food. He left a voice mail message with Campbell informing him that he could no longer perform the essential functions of his position as a retail sales representative without injuring himself because lifting was "part of the job out there." Campbell responded by asking Burfield to bring documentation of his restrictions to the weekly sales meeting so that he and Burfield could discuss the matter. Burfield met with Campbell on July 2, 1992, and at that time Burfield provided Campbell with copies of his medical records. Campbell responded that he would need to discuss the matter with his supervisor, David

Curtis. After this meeting, Burfield worked the remainder of the week before going on vacation until Monday, July 13, 1992.

On July 14, 1992, Burfield met with Campbell and Curtis. At this meeting, Burfield again stated that he could no longer perform the merchandising functions required in his position as a retail sales representative. He requested that he instead be allowed to do survey work for Tom Thumb. Campbell and Curtis advised Burfield that BM & F could not create such a position. They consequently informed Burfield that BM & F had no retail sales representative positions that did not involve merchandising, but that Burfield was welcome to interview for two administrative positions which were then available. Burfield has indicated that at this time (the July 14, 1992 meeting) he believed he was being discharged from employment with BM & F.[4]

On August 17, 1992, Hugh Wilson, Secretary-Treasurer at BM & F, sent Burfield a letter explaining that since Burfield was unable to perform his job as a retail sales representative and because there were no other jobs available that accommodated Burfield's medical restrictions, he was being placed on an unpaid leave of absence with continuation of his medical insurance and other employee benefits until he was able to return to work or until December 31, 1992, whichever was sooner. Burfield was further

---

[4]In his affidavit, Burfield made the following statements: "I was then asked to fill out some paperwork which informed me of why I was being let go, i.e. that there no light duty.... I was never returned to work at BM & F, and was never offered or contacted about a job, either with or without reasonable accommodation, at BM & F after July 14, 1992."

6

advised that, although no positions accommodating his restrictions were currently available, he could continue to contact BM & F to inquire whether any such positions had become open. On November 16, 1992, Burfield filed a charge of discrimination with the Equal Employment Opportunity Commission, asserting that BM & F had discriminated against him in violation of the ADA because he was denied an accommodation for his disability and was discharged for "not being able to perform my duties without restrictions." Burfield further asserted that BM & F had discriminated against him on the basis of his age in violation of the ADEA by not promoting him to a marketing position. This claim was based upon specific promotions and hirings which occurred at BM & F between August of 1988 and April of 1991.

On August 30, 1992, Burfield filed for, and began receiving, unemployment compensation benefits from the Texas Employment Commission (TEC). Burfield informed the TEC that he had been terminated on July 15, 1992 because he sustained a job-related injury to his neck. In determining Burfield's entitlement to benefits, the TEC ruled that Burfield was able to work because his physical condition did not prevent him from performing other work for which he was qualified and which he could reasonably expect to obtain. Since March of 1993, Burfield has worked in Dallas as a paralegal.[5]

Burfield instituted this civil action on August 18, 1993.

---

[5]Burfield began taking night classes in paralegal studies in September of 1989. He was awarded his associate's degree in paralegal studies in May of 1992.

Summary judgment was granted in favor of BM & F by the district court on July 26, 1994. Burfield subsequently brought this appeal, arguing that he was not effectively terminated by BM & F until after the effective date of the ADA, and that a reasonable factfinder could determine that he was a victim of discrimination in retaliation for filing workers' compensation claims in violation of Tex.Labor Code § 451.001.

## II. STANDARD OF REVIEW

In employment discrimination cases, we review summary judgments *de novo,* applying the same standard as the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). First, we consult the applicable law to ascertain the material factual issues. *King v. Chide,* 974 F.2d 653, 655-56 (5th Cir.1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994); *FDIC v. Dawson,* 4 F.3d 1303, 1306 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under Rule 56(c), the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and of identifying the portions of the record that it

8

believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); *Norman,* 19 F.3d at 1023. The burden on the non-moving party is to do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

### III. DISCUSSION

A. *Burfield's ADA claim*

The ADA became effective for most employers and employees on July 26, 1992. *See* Pub.L. No. 101-336, Title I, § 108, 104 Stat. 337 (1990). The ADA is not retroactive and it does not apply to actions allegedly taken prior to the effective date of the Act. *O'Bryant v. City of Midland,* 9 F.3d 421 (5th Cir.1993). BM & F asserts that Burfield was terminated during the meeting with Campbell and Curtis on July 14, 1992 (twelve days before the effective date of the ADA), and that consequently his ADA claim is barred. Burfield argues that a question of material fact exists regarding the date of his termination because he received a letter

from BM & F on August 17, 1992 informing him that he had been placed on leave of absence effective until December 31, 1992. Thus, a determination of when Burfield was terminated at BM & F occurred is crucial in determining whether an ADA cause of action exists.

The district court, in attempting to resolve this issue, applied the test which we used in *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128 (5th Cir.1992). In *Thurman,* we held that the limitations period for a suit for wrongful termination under article 8307c of the Texas Revised Civil Statutes, the predecessor to Texas Labor Code § 451.001, *see supra* note 1, will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination. *Id.* at 134.[6]

Burfield attempts to distinguish his case from *Thurman* primarily through his contention that the August 17, 1992 letter he received from BM & F precludes a finding of summary judgment on the issue of whether he had received unequivocal notice of termination

---

[6]This test was originally promulgated in *Bonham v. Dresser Industries,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). In addressing an appeal in an ADEA case, the court held that "where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date." This test was later used by the Ninth Circuit in *Naton v. Bank of Cal.,* 649 F.2d 691 (9th Cir.1981). Looking to *Bonham,* the court in *Naton* enunciated a rule which isolated the accrual date of a cause of action under the ADEA. The employee in that case was notified of his termination and stopped working for his employer on January 17. The employee was officially terminated for administrative purposes on May 2. In determining the accrual date of his cause of action, the court held that "when unequivocal notice of termination and the last day of work coincide, the alleged unlawful practice occurs on that date." *See Thurman v. Sears, Roebuck & Co.,* 952 F.2d at 133.

on July 14, 1992. He also asserts that BM & F had claimed at various other times throughout the course of the proceedings that he was not terminated until December 31, 1992. Burfield admits, however, that he believed that he was terminated on July 14, 1992, but he argues that his "feeling [did] not make it so." This argument fails, however, because a determination of when the cause of action arises in an ADA case, as in other employment discrimination contexts, must focus on when the employee receives unequivocal notice of the facts giving rise to his claim or a reasonable person would know of the facts giving rise to a claim. *See Thurman,* 952 F.2d at 134; *Naton,* 649 F.2d at 695; *Bonham,* 569 F.2d at 192. Where, as here, the employee was informed that he was being terminated—the act alleged to have violated the ADA—on his last day of actual work and where he understood that he was being terminated, the cause of action accrues on that day.

We agree with the district court that the August 17, 1992 letter informing Burfield that he had been placed on leave of absence which would be in effect until December 31, 1992 was at most a written confirmation of the termination which had occurred on July 14, 1992 and an explanation of how BM & F would assist Burfield by providing certain benefits through his placement on leave of absence for the remainder of the year or until he commenced employment again with BM & F or some other company. This court disfavors any rule that would penalize an employer for giving an employee severance pay or other extended benefits after the employment relationship has terminated. *Thurman,* 952 F.2d at 137;

11

*Bonham,* 569 F.2d at 191-92.

In summary, Burfield has not presented sufficient evidence to raise a fact question about the date when the alleged discrimination in violation of the ADA occurred.

B. *Burfield's retaliatory discharge claim*

Burfield claims that he was terminated in violation of § 451.001 of the Texas Labor Code in retaliation for filing a workers' compensation claim. Section 451.001 is a statutory exception to the Texas common law doctrine of employment-at-will. The statute provides that "[n]o person may discharge or in any other manner discriminate against an employee because the employee filed a claim, hired a lawyer to represent [him] in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding." *Swearingen v. Owens-Corning Fiberglas Corp.,* 968 F.2d 559, 561 (5th Cir.1992). Unless one of the four specific circumstances in the article motivated the employer in discharging or discriminating against the employee, that employee cannot prevail on a claim based on this article. *Id.* at 563.

An employee claiming discharge in violation of § 451.001 has the burden of at least demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits. While the employee can meet this burden without showing that he was fired solely because of the filing of the workers' compensation claim, he must show that the filing of the claim was

12

at least a determining factor in the discharge. *Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 265 (5th Cir.1991); *see also Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Texas 1987) (noting that an employee did not have to prove that her discharge was solely because of the filing of her workers' compensation claim). The employee may show causation by direct evidence or by circumstantial evidence, and by the reasonable inferences which may be drawn from such evidence. *Investment Properties Management v. Montes,* 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ). The employer must rebut by showing a legitimate reason for the discharge. *Jones v. Roadway Exp., Inc.,* 931 F.2d 1086, 1090 (5th Cir.1991).

Burfield's argument relies on statements made by Ron Campbell in March of 1991 and on statements made by Leonard Bara in April of 1991 regarding his filing of a workers' compensation claim.[7] Burfield argues that these statements indicate BM & F's "clear anger" with his claim. Assuming that this "clear anger" did indeed exist, these statements were made approximately fifteen to sixteen months before Burfield was terminated by BM & F. While the length of time between these statements and the termination is not the determining factor, Texas courts have frequently looked at the temporal proximity between the protected activity and the adverse

---

[7]Burfield refers to Campbell's alleged response of "Hell, no" when asked if Burfield should file a claim for workers' compensation on March 20, 1991 (the date of his injury), and to Leonard Bara's alleged response to Burfield's request to fill out the claim approximately 3-4 weeks later. Burfield also refers to Bara's alleged statement to him a few weeks later that "Thanks to you our rates are about to double."

13

employment action for circumstantial evidence of retaliatory motive. *See, e.g. Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 82 (Tex.App.—El Paso 1992, no writ) (finding a retaliatory motive where an employer terminated an employee a few days after injury specifically to deny employee the opportunity to file a claim); *Chemical Express Carriers, Inc. v. Pina,* 819 S.W.2d 585, 590 (Tex.App.—El Paso 1991, writ denied) (finding a retaliatory motive where discharge occurred only one month after a compensation claim was filed). In this case, the long time period between the workers' compensation claim and the discharge militates against a finding of retaliation.

BM & F asserts that Burfield was terminated because he was no longer able to perform essential functions of his job as a retail sales representative, and because there were no "light duty" positions available at that time. In Texas, an employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position. *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534, 540 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) (employer not obligated to reinstate a worker who could not lift over 50 pounds after an injury and still had the same pain which caused him to file the workers' compensation claim). Burfield does not deny that he was unable to perform certain essential functions of the position as a retail sales representative, and accordingly under Texas law BM & F was allowed to terminate him.

14

Burfield has not presented evidence which shows a causal connection between the termination and his filing for workers' compensation benefits. The district court's grant of summary judgment was correct on this issue.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's granting of summary judgment for BM & F.