**Peyton Cochran HINCH, Plaintiff,**

v.

**Captain Peggy DUNCAN, Al A. Tumminia, Albemarle–Charlottesville Joint Security Complex, City of Charlottesville, VA., and County of Albemarle, VA., Defendants.**

**Civil Action No. 96–0004–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 4, 1996.

Margaret McLeod Cain, Charlottesville, VA, for plaintiff.

Tammy Moss Finley, The Center for Employment Law, P.C., Roanoke, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter concerns a suit filed by Plaintiff Peyton Cochran Hinch on January 24, 1996, alleging violations of the Americans with Disabilities Act,[1] 42 U.S.C. § 12101 *et seq.* ("ADA") and the Virginians with Disabilities Act,[2] Va.Code § 51.5–1 *et seq.* ("VDA").[3]

### I.

Plaintiff was employed by Defendant Albemarle–Charlottesville Joint Security Complex ("Security Complex") as a correctional officer from November 1, 1988 to August 31, 1992. Other than Defendants City of Charlottesville and County of Albemarle, plaintiff has also named as defendants Captain Peggy Duncan, the director/supervisor of the Security Complex, and Al A. Tumminia, the administrator of the Security Complex. The Security Complex hired plaintiff, knowing that he had an artificial limb serving as a replacement for his lower right leg which had been amputated. Two years after he was hired, plaintiff's leg had to be further amputated, and, consequently, the Security Complex placed him on temporary "light duty." On June 29, 1992, the Security Complex advised plaintiff that he could not be placed on permanent light duty because there was no existing position consisting only of such work. The Security Complex offered two options to plaintiff; he could either (1) resume regular job duties without accommodation on July 18, 1992, or (2) he could seek disability retirement by July 18, 1992. The Security Complex warned plaintiff on June 29, 1992, that if he did not resume his regular

1. Section 12112 of the Americans with Disabilities Act directs that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A "qualified individual with a disability" is one who can perform essential job functions "with or without reasonable accommodation." *Id.* § 12111(8). Failure to provide "reasonable accommodation" qualifies as discrimination. *Id.* § 12112(b)(5)(A).

2. Section 51.5–41 of the Virginians with Disabilities Act states that "[n]o employer shall discriminate in employment or promotion practices against an otherwise qualified person with a disability solely because of such disability." Va. Code.Ann. § 51.5–41.

3. In a very convoluted manner, plaintiff (represented by counsel) gave defendants some reason to think that Title VII, 42 U.S.C. § 2000e *et seq.* was possibly implicated in his complaint: Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Because plaintiff has not alleged, even by the most liberal reading of his complaint, any discrimination based on race, color, religion, sex, or national origin, he has no Title VII claim against defendants.

duties on July 18, 1992, or apply for retirement benefits, he would be discharged; the Security Complex informed plaintiff that if he needed relief from his duties, he could use his accrued sick leave. Plaintiff returned to work on July 18, 1992, and attempted to perform his regular duties without accommodation, using accrued sick time when he had to miss work. Plaintiff received the disability benefits for which he applied on August 31, 1992, which was his effective date of separation from the Security Complex.

Plaintiff alleges that defendants engaged in disability-based discrimination against him when they discharged him, in violation of the ADA (Count I). Further, plaintiff claims that defendants violated the ADA by failing to develop and implement policies, procedures, and training to prevent violations of the ADA (Count II). Finally, plaintiff alleges that defendants violated the VDA because they discriminated against him based on his disability (Count III).

Defendants moved the court to dismiss all of plaintiff's claims under Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure or, alternatively, Fed.R.Civ.P. 56 (because defendants have relied upon the charge of discrimination plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"), which they have attached to their motion to dismiss). Plaintiff opposed defendants' motion to dismiss (or, alternatively, motion for summary judgment), and requested permission to amend his complaint.

In a Report and Recommendation issued September 17, 1996, United States Magistrate Judge B. Waugh Crigler recommended that this court dismiss Counts I and II with prejudice, and Count III without prejudice. The Magistrate concluded that plaintiff's motion to amend his complaint should be denied as futile. Both parties filed objections to the Magistrate's Report. Defendants took issue with the Magistrate's suggestion that they had waived certain arguments in support of their motion to dismiss, and plaintiff objected to the Magistrate's dismissal of Counts I, II, and III. For the reasons stated in the Magistrate's Report and Recommendation of September 17, 1996, and this Memorandum

Opinion, plaintiff's objections are overruled. Because defendants did not waive any of their arguments (but simply chose to focus on certain theories to the exclusion of others during oral argument) insofar as the Magistrate suggested that defendants abandoned the arguments not discussed during oral argument, this conclusion is overruled.[4]

## II.

The ADA became effective on July 26, 1992, *see* Pub.L. No. 101–336, Title I, § 108, 104 Stat. 337 (1990), and it is not retroactive. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995) ("The ADA is not retroactive and it does not apply to action allegedly taken prior to the effective date of the Act.").

Defendants contend that any allegedly discriminatory conduct took place before July 26, 1992. They argue the last date of the allegedly discriminatory act took place on June 29, 1992, when defendants gave plaintiff the ultimatum which allegedly discriminated against plaintiff based on his disability. Similarly, defendants argue any policies, procedures, or training that might have prevented the allegedly discriminatory ultimatum failed to be implemented prior to June 29, 1992, before the ADA became effective. Hence, defendants maintain, plaintiff's cause of action accrued on June 29, 1992, approximately one month before the effective date of the ADA.

*Burfield,* a case from the Fifth Circuit, speaks to this issue. In that case, the Fifth Circuit held that when an employee was fired on July 12, 1992, only twelve days before the date the ADA became effective, the employee was barred from proceeding under the ADA, even though the employer notified the employee by letter on August 17, 1992, that he would be placed on leave of absence until December 31, 1992. To determine the date upon which the employee's cause of action arose, the Fifth Circuit relied on the test used in cases dealing with defenses based on the running of a statute of limitations. 51 F.3d at 589 ("[A] determination of when the

4. Because of the possibility of appeal, this point is not moot.

cause of action arises in an ADA case, as in other employment discrimination contexts, must focus on when the employee receives unequivocal notice of the facts giving rise to his claim or a reasonable person would know of the facts giving rise to a claim."). The Fifth Circuit concluded that "[w]here, as here, the employee was informed that he was terminated—the act alleged to have violated the ADA—on his last day of actual work and where he understood that he was being terminated, the cause of action accrues on that day." *Id.*

That plaintiff continued to work after the day he became aware that he would be discharged does not take this case out of the rule articulated in *Burfield.* To reach the proper result, one must look to cases dealing with the running of statutory limitations, as the court in *Burfield* did. This case law, while not directly on point, provides not only useful guidance, but also reasoning which governs the analysis in the case at bar. This is because in deciding whether a claim is time-barred courts ask the precise question that must be answered here: when did the discriminatory act occur? *See Graehling v. Village of Lombard,* 58 F.3d 295, 296–97 (7th Cir.1995) ("The premise of [such] cases is that the employer took one dispositive act. Like punching someone in the nose, this act may lead to injury in the future, but when there is only one wrongful act the claim accrues with the first injury.").

■ Because cases that involve no "continuing violation" (e.g., sexual harassment), but rather one distinct act, like a firing, accrue at the time the discriminatory decision is made and conveyed to the victim, the effects of those decisions do not constitute renewed discrimination as a matter of law. *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980) (holding that the statute of limitations begins to run once the employee has notice of the challenged employment action, not when the impact of that decision is felt)); *English v. Whitfield,* 858 F.2d 957, 961 (4th Cir.1988) ("The proper focus ... is on the time of the challenged conduct and its notification rather than the time its painful consequences are ultimately felt...."); *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982) ("[T]he filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition.") (citations omitted); *Lever v. Northwestern University,* 979 F.2d 552, 556 (7th Cir.1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.").

The Fourth Circuit has held that when an employee is notified unequivocally of her imminent discharge, that day, and not the actual date of separation, starts the running of the statute of limitations. In *English,* the employee was informed on May 15, 1984, of her removal from her position and of a 90–day temporary assignment during which she could bid for other positions. The employee was also told that if she did not find a permanent position within the 90–day time period, she would be laid off. On July 27, 1984, the employee's temporary position expired, and effective July 30, 1984, she was laid off. The Fourth Circuit held that May 15, and not July 30, was the date on which the discriminatory act took place. 858 F.2d at 959–61.

As defendants argue, plaintiff is no different than the employee in *English*—even though he continued to work for defendants after they had made the allegedly discriminatory decision, this did not extend his cause of action for purposes of determining whether his claim accrued prior to that date upon which the ADA became effective. Plaintiff states that "[d]efendants' actions were an ongoing series of events which culminated in the denial of accommodation and loss of [p]laintiff's employment...." Pl.'s Mem. at p. 2. Hence, plaintiff concedes the injury to plaintiff occurred when he was denied accommodation and lost employment. Plaintiff's objections to the Magistrate's Report boil down to a disagreement with applicable Fourth Circuit precedent. Therefore, plaintiff's claims under the ADA (Counts I and II) are dismissed because plaintiff cannot prem-

ise an ADA claim on discrimination that occurred before the ADA became effective.[5]

Plaintiff's pendent state law claim under the VDA is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Because plaintiff has made no objection to the Magistrate's determination that his claim to amend his complaint should be denied, and the court agrees that amendment would be futile, the Magistrate's recommendation is adopted.

An appropriate Order shall this day issue.

---

**5.** In so holding, the court in no way implies that a claim under the ADA exists for a failure to implement employee training, policies, and procedures (Count II of plaintiff's complaint).