NUMBER
13-99-271-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

RANDY
WEST AND 

ANTONIA WEST,                                                        Appellants,

 

                                                   v.

 

MAINTENANCE
TOOL AND

SUPPLY
CO., INC. AND RENE

RODRIGUEZ,
INDIVIDUALLY 

AND AS
REPRESENTATIVE OF

MAINTENANCE
TOOL AND

SUPPLY CO., INC.                                                      Appellees.

___________________________________________________________________

 

     On appeal
from the 347th District Court of Nueces County, Texas.

___________________________________________________________________

 

O P I N I O N

 

                     Before
Justices Dorsey, Yanez, and Seerden[1]








                                   Opinion
by Justice Yañez                      

 

Appellants, Randy and Antonia West,[2]
bring this appeal from a default summary judgment granted in favor of
appellees, Maintenance Tool & Supply Company, Inc. and Rene Rodriguez
(collectively AMT@), on West=s claims for workers= compensation retaliation[3]
and defamation.  The judgment also
awarded MT $21,095.00 in sanctions pursuant to rule 13.  See Tex.
R. Civ. P. 13. 

In five issues, West contends: (1) he did not
receive adequate notice of the summary judgment hearing because the notice was
unsigned and referred only to a Aproposed@ date and time for the hearing; (2) the trial court
erred in granting summary judgment in MT=s favor; (3) the trial court erred in overruling
his motion for new trial; and (4) the trial court=s order imposing sanctions pursuant to rule 13 is
void and unenforceable because (a) it fails to state grounds for holding West=s counsel in contempt and (b) fails to state with
particularity the good cause for finding that the pleadings upon which
sanctions are based are groundless and frivolous and brought for purposes of
harassment.  We reverse the order imposing sanctions against West=s counsel and otherwise  affirm the trial court=s judgment.

                                                      Background








West filed suit against MT, alleging retaliatory
discharge and defamation.  MT filed a Atraditional@ motion for summary judgment under rule
166a(c).  See Tex. R. Civ. P. 166a(c).  MT=s motion also requested that the trial court impose
rule 13 sanctions against West=s counsel on grounds that West=s claims were groundless and brought in bad faith
and for purposes of harassment.  See Tex. R. Civ. P. 13.  MT=s
motion was served on West=s counsel, along with a ANotice of Hearing,@ which stated that a hearing was set for Wednesday,
February 3, 1999, at 1:30 p.m.  The ANotice of Hearing@ included spaces for the judge=s signature and the date, which were left
blank.  A copy of the cover letter to the
district clerk was attached to the motion; the letter described the notice as a
Aproposed
Order and Notice of Hearing.@  West=s counsel 
contends he understood the notice as a proposed hearing date
only, and that he failed to understand that a hearing had been set.  West did not file a response to the summary
judgment motion and did not appear at the hearing.

On February 3, 1999, the day of the hearing, the
trial court granted the motion for summary judgment and imposed rule 13
sanctions in the amount of $21,095.00 against West.  Two days later, West filed a AMotion to Withdraw Order Granting Summary Judgment
and Rule 13 Sanctions and Motion for New Trial.@[4]  The trial
court held a hearing on April 13, 1999 and denied West=s motion on April 20, 1999. 








          In his first issue, West contends he did not
receive adequate notice of the summary judgment hearing because the notice was
unsigned and referred only to a Aproposed@ date and time for hearing.  In his third issue, West contends the trial
court erred in overruling his motion for new trial.  Because these issues are related, we address
them together.  The threshold issue,
however, is the standard to be used in reviewing the motion and the trial court=s overruling of that motion. 

                                                   Craddock
Issue

The Texas Supreme Court recently addressed the
issue of whether the Craddock standard[5]
applies to a motion for new trial filed after a default summary judgment.  See Bob E. Carpenter v. Cimarron
Hydrocarbons Corp., 45 Tex. Sup. Ct. J. 1031, 2002 Tex. LEXIS 120, at *2-3
(July 3, 2002).  The court held that the Craddock
rule

does not apply to a motion for new trial filed
after judgment has been granted on a summary-judgment motion to which the
nonmovant failed to timely respond when the movant [for new trial] had an
opportunity to seek a continuance or obtain permission to file a late response.

 

Id. at
*9 (emphasis added).  The Craddock test,
applicable in determining whether to set aside a default judgment, requires a
movant for new trial to show that:  (1)
the defendant=s failure to appear was not intentional, or the
result of conscious indifference, but was due to mistake or accident; (2) the
defendant had a meritorious defense; and (3) the motion for new trial was filed
when it would not occasion a delay or otherwise work an injury to the
plaintiff.  See Craddock v. Sunshine
Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939). 








In Cimarron, the defendant moved for summary
judgment after the plaintiff=s (Cimarron=s) counsel withdrew from the case; a hearing on the
motion was scheduled.  Cimarron, 2002
Tex. LEXIS 120, at *4-5.  After Cimarron
obtained new counsel, the parties agreed to reschedule the hearing.  Id. at *5.  Cimarron=s counsel instructed an associate to file a
response when the hearing was rescheduled. 
Id.  Although Cimarron=s counsel received notice that the hearing had been
rescheduled, he failed to notify the associate. 
Id.  Thus, the associate
was unaware of the hearing and failed to file a response.  Id.  Cimarron=s attorneys discovered two days before the hearing
that no response had been filed, and asked opposing counsel to agree to the
late filing of a response or to a continuance of the hearing, but counsel
refused.  Id. at *6.  On the day of the hearing, Cimarron filed
a  proposed response, along with a motion
for leave to file an untimely response, and a motion for continuance.  Id. 
The trial court denied both motions and granted summary judgment in
favor of the defendants.  Id.  Thereafter, Cimarron filed a motion for
new trial, which the trial court also denied. 
Id.  

On appeal, the Fort Worth Court of Appeals applied
the Craddock standard and reversed the summary judgment.  Cimarron Hydrocarbons Corp. v. Bob E.
Carpenter, 35 S.W.3d 692, 696 (Tex. App.BFort Worth 2000), rev=d, 45
Tex. Sup. Ct. J. 1031, 2002 Tex. LEXIS 120, at *3-4 (July 3, 2002). 

The supreme court reversed, holding that Craddock
was inapplicable because Cimarron learned of its failure to file a response before
judgment was rendered, and thus had an opportunity to seek other remedies
provided to a defaulting party by the procedural rules (such as a motion for
leave to file a late response and a motion for continuance).[6]  Cimarron, 2002 Tex. LEXIS 120, at
*8-9.  

Having determined that Craddock was
inapplicable to the circumstances before it 
in Cimarron, the supreme court also held that:








a
motion for leave to file a late summary-judgment response should be granted
when a litigant establishes good cause for failing to timely respond by showing
that (1) the failure to respond was not intentional or the result of conscious
indifference, but the result of accident or mistake, and (2) allowing the late
response will occasion no undue delay or otherwise injure the party seeking
summary judgment.

 

Id. at *16.  The
court held that the trial court did not abuse its discretion in denying
Cimarron=s
motion for leave to file a late response because Cimarron failed to establish
good cause by not offering an explanation for its failure to timely respond and
by not including supporting affidavits or other evidence with its motion.  Id.

Applying the holding
in Cimarron to the present case, in order to determine whether Craddock
is applicable to the denial of West=s motion for new trial, we must initially determine
whether West had an opportunity before judgment was rendered to seek other
remedies provided to a defaulting party by the procedural rules.  See id. at *9.

West contends he did not
receive adequate notice of the summary judgment hearing because the notice was
unsigned and referred only to a Aproposed@ date and time for the hearing.  Attached to West=s Second Supplemental Motion for New Trial is the
affidavit of West=s counsel, in which he states that when he received
MT=s
motion for summary judgment and notice of hearing, he understood the date
referenced in the notice to be only a proposed date, and believed he
would later be notified if the proposed date was accepted by the court and the
motion set for hearing.  It is undisputed
that West=s
counsel received the unsigned notice and letter referencing the Aproposed@ hearing date prior to the date of the
hearing.    








West argues that the Anotice of hearing@ was insufficient because although it referenced a
time and date for the hearing, it was not dated and did not include the judge=s signature. 
West cites no authority, however, and we have found none, in support of
the proposition that the absence of the judge=s signature from a notice setting a hearing under
rule 166a(c) invalidates the notice.  To
the contrary, in Goode v. Avis Rent-A-Car, 832 S.W.2d 202, 204 (Tex.
App.BHouston
[1st Dist.] 1992, writ denied), the First Court of Appeals found that an
unsigned order setting a hearing date on a motion for summary judgment was
sufficient to provide notice of the hearing. 
See id.  West argues Goode
is distinguishable because: 1) the non-movant in Goode timely filed a
response to the motion for summary judgment; and 2) the notice in Goode, although
unsigned by the judge, was signed by opposing counsel, whereas the notice in
the present case bore neither the judge=s signature nor the signature of opposing
counsel.  Although we conclude that the
statement in Goode that an unsigned order provides sufficient notice of
a summary judgment hearing is arguably dicta, we agree that the absence
of a judge=s
signature on a notice setting a hearing does not, standing alone, invalidate
the notice.  Moreover, this Court has
previously noted that 

[a] letter requesting a specific date for a trial
or hearing, at least when a copy of that letter is sent to the opposing parties,
is itself sufficient notice of the setting on that date; it is generally
reasonable to assume that if a particular setting is requested, the litigants
are put on notice that trial or hearing may be had on that requested date.  Mansfield State Bank v. Cohn, 573
S.W.2d 181, 185 (Tex. 1978).  

 

Longoria v. United Blood Servs., 907 S.W.2d 605, 610 (Tex. App.BCorpus Christi 1995), rev=d on other grounds, 938 S.W.2d 29 (Tex. 1997).  

We hold that the notice received by West=s counsel was sufficient to provide notice of the
hearing.  Accordingly, we overrule West=s first issue. 








In Cimarron, the supreme court briefly
discussed various decisions in which the courts of appeals have found Craddock
applicable in the summary judgment context, and the very limited number of
decisions in which courts have refused to do so.  See Cimarron, 2002 Tex. LEXIS 120, at
*9-11.  The Cimarron court noted
that with one exception, which it disapproved,[7]
all of the cases applying Craddock were in circumstances where the
summary judgment non-movant did not become aware that a response was due until after
judgment was rendered, and thus Adid not have an opportunity before judgment@ to pursue other relief provided for in the rules
of civil procedure.  Id. at
*11.     

In the present case, we have already determined
that West had notice of the hearing. 
Accordingly, we hold he had an opportunity before judgment to pursue
other relief provided by the rules of civil procedure, and Craddock is
therefore inapplicable to his motion for new trial.  See id. at *2-3.








As a general rule, the denial of a motion for new
trial that does not contain one of the complaints enumerated in rule 324(b), see
Tex. R. Civ. P. 324(b), is
reviewed for abuse of discretion.  Champion
Int=l
Corp. v. Twelfth Ct. App., 762
S.W.2d 898, 899 (Tex. 1988) (orig. proceeding); Washington v. McMillan, 898
S.W.2d 392, 394 (Tex. App.BSan Antonio 1995, no writ); Twenty-Four Thousand
One Hundred Eighty Dollars in U.S. Currency v. State, 865 S.W.2d 181, 186
n. 4 (Tex. App.BCorpus Christi 1993, writ denied); see also W.
Wendall Hall, Standards of Review in Texas, 29 St. Mary=s L.J. 351, 459-60 (1998)
(standard of review depends upon
complaint preserved in motion for new trial). 
A trial court abuses its discretion when it acts without reference to
any guiding rules or principles, Cimarron, 2002 Tex. LEXIS 120, at *12
(citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-242
(Tex. 1985)), or when it incorrectly ignores any legal or equitable excuse for
the failure to respond.  See Crime
Control, Inc. v. RMH-Oxford Joint Venture, 712 S.W.2d 550, 552 (Tex. App.BHouston [14th Dist.] 1986, no writ).  Application of the abuse of discretion
standard thus requires a determination of the Aguiding rules and principles.@  McMillan,
898 S.W.2d at 394.   

As noted, in Cimarron, the supreme court
discussed the Agood cause@ standard applicable to a trial court=s ruling on a motion for leave to file a late
summary judgment response: 

a motion for leave to file a late summary- judgment
response should be granted when a litigant establishes good cause for failing
to timely respond by showing that (1) the failure to respond was not
intentional or the result of conscious indifference, but the result of accident
or mistake, and (2) allowing the late response will occasion no undue delay or
otherwise injure the party seeking summary judgment. 

 

Cimarron,
2002 Tex. LEXIS 120, at *16.  

 

Here, West argues he did not learn of the hearing
until after judgment had been granted, and therefore, filed a motion for new
trial rather than a motion to file a late summary judgment response.  We decline to decide whether the Agood cause@ standard outlined in Cimarron is applicable
in the circumstances before us because under an abuse of discretion standard,
either with or without application of the Agood cause@ guidelines discussed in Cimarron, we
conclude the trial court did not abuse its discretion in denying West=s motion for new trial.

West=s excuse for his failure to timely file a response
and appear at the hearing is








that he had neither actual nor constructive notice
of the hearing because he understood the notice as merely advising him of a
proposed hearing date.  We have already
determined that West had actual notice of the hearing date.  AActual notice@ embraces those things that a reasonably diligent
inquiry and exercise of the means of information at hand would have
disclosed.  Goode, 832 S.W.2d at
204 (finding an unsigned order attached to motion for summary judgment and
approved by movant's attorney sufficient to provide notice).  This Court has previously observed that it is
generally reasonable to assume a letter requesting a date for a hearing puts
litigants on notice that the hearing may be held on that date.  United Blood Servs., 907 S.W.2d at
610.

Similarly, we find that West failed to establish Agood cause@ for his failure to timely respond because he has
not shown that such failure was Anot intentional or the result of conscious
indifference.@  See
Cimarron, 2002 Tex. LEXIS 120, at *16.  
A failure to appear is not intentional or due to conscious indifference
merely because it was deliberate; it must also be without adequate
justification.  See Smith v. Babcock
& Wilcox Constr. Co., 913 S.W.2d 467, 468 (Tex. 1995).  Proof of such justificationC accident, mistake, or other reasonable explanationC negates the intent or conscious indifference for
which a new trial can be denied.  Id.  We hold that because West had actual
notice of the hearing, his  failure to
respond was without adequate justification. 
See id.  West=s excuse does not constitute a Alegal or equitable excuse for [his] failure to
respond.@  See Crime Control, 712 S.W.2d at 552.  We hold the trial court did not abuse its
discretion in denying West =s motion for new trial.  We overrule West=s third issue. 


                                               Summary
Judgment 








In his second issue, West contends the trial court
erred in granting summary judgment in MT=s favor because MT failed to establish that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law.  West argues that MT=s summary judgment evidence is insufficient to
establish entitlement to summary judgment with regard to West=s retaliation and defamation claims.

MT filed a Atraditional@ summary judgment under rule 166a(c).  See Tex.
R. Civ. P. 166a(c).  In reviewing
a traditional summary judgment, the moving party has the burden of establishing
that no material fact issue exists and it is entitled to judgment as a matter
of law.  M.D. Anderson Hosp. and Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000).  In determining whether a disputed material
fact issue precludes summary judgment, the court must take evidence favorable
to the non-movant as true, indulge every reasonable inference in favor of the
non-movant, and resolve all doubts in favor of the non-movant.  Id.  Summary
judgments must stand on their own merits. 
Id.  A nonmovant need not
respond to a motion for summary judgment to contend on appeal that the movant's
summary judgment proof is legally insufficient. 
Id.; City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979). 

Thus, as the movant, MT bears the burden of
submitting summary judgment evidence disproving at least one essential element
of each of West=s causes of action. 
See Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997).  We now turn to whether the trial
court erred in granting summary judgment on West=s retaliation claim.

                                              Retaliatory
Discharge 

In its motion for summary judgment, MT asserted
that:

 

there are no facts supporting the elements of a
wrongful termination cause of action. 
Randy West was released to full duty by his surgeon on March 10,
1998.  Mr. West did not see [sic]
further medical attention until April 2, 1998. 
During that period, he made no attempt to contact his employer.  Mack Rodriguez simply filled West=s position as allowed by law.  

 








Section 451 of the Texas Labor Code prohibits an
employer from discharging an employee for filing a workers' compensation claim
in good faith.  See Tex. Lab. Code Ann. ' 451.001 (Vernon 1996).  A prima facie case of  retaliation consists of the following
elements: (1) the plaintiff engaged in a protected activity; (2) an adverse
employment action occurred; and (3) there was a causal connection between
participation in the protected activity and the adverse employment
decision.  Azubuike v. Fiesta Mart,
Inc., 970 S.W.2d 60, 65 (Tex. App.BHouston [14th Dist.] 1998, no pet.). In determining
the causal connection, an employee need not show he was fired solely because of
the workers' compensation claim.  See
Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450-51 & n.3 (Tex.
1996).  However, he must establish that
"but for" the filing of the claim, the discharge would not have
occurred when it did.  Trico Techs.
Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex. 1997); Cazarez, 937
S.W.2d at 450-51 & n.3.  This
purely factual question centers on the employee=s conduct and the employer=s motivation. 
Trevino v. Levi-Strauss & Co., 197 F.3d 777, 780 (5th Cir.
1999). 

An employee has the burden of demonstrating a
causal link between the discharge and the filing of a workers= compensation claim.  Garcia v. Allen, 28 S.W.3d 587, 600
(Tex. App.BCorpus
Christi 2000, pet. denied).  This causal
connection is an element of the employee=s prima facie case and may be established by
direct or circumstantial evidence and by reasonable inferences which may be
drawn from such evidence.  Burfield v.
Brown, Moore & Flint, Inc., 51 F.3d 583, 589 (5th Cir. 1995);  Allen, 28 S.W.3d at 600.     








Circumstantial evidence sufficient to establish a
causal link between termination and filing a compensation claim includes:  (1) knowledge of the compensation claim by
those making the decision on termination; (2) expression of a negative attitude
toward the employee's injured condition; (3) failure to adhere to established
company policies; (4) discriminatory treatment in comparison to similarly
situated employees; and (5) evidence that the stated reason for the discharge
was false.  Cazarez, 937 S.W.2d at
450-51; Allen, 28 S.W.3d at 600. 
Once an employee has established the causal link, the employer bears the
burden to rebut the alleged improper termination by
showing there was a legitimate reason behind it.  Allen, 28 S.W.3d at 600.  Thereafter, in order to survive a motion for
summary judgment, the burden shifts back to the employee to produce
controverting evidence of a retaliatory motive. 
Id.  

It is appropriate to first determine how to apply
the burden-shifting analysis in the context of a summary judgment.  Jenkins v. Guardian Indus. Corp., 16
S.W.3d 431, 441 (Tex. App.BWaco 2000, pet. denied).  When an employer files a summary judgment
motion, the employee has not been called on to produce evidence of the
employer's motive.  Id.  Only after the employer's summary
judgment evidence establishes a legitimate, non-discriminatory reason for the
discharge is the employee required to come forward with summary judgment
evidence of a retaliatory motive.  Id.  Subjective beliefs are no more than mere
conclusions and are not competent summary judgment evidence.  Tex. Div.-Tranter, Inc. v. Carrozza, 876
S.W.2d 312, 314 (Tex. 1994).  

Here, we construe MT=s argument to be that it is entitled to summary
judgment because it disproved the causation element of West=s cause of action. 
MT argues that it did not actually terminate West, but rather, Asimply filled [his] position as allowed by law.@ 








Appellate review of a trial court's ruling granting a motion for
summary judgment is limited to the record as it existed before the trial court
at the hearing on the motion.  Tex. R. Civ. P. 166a(c); Havens v.
Ayers, 886 S.W.2d 506, 511 (Tex. App.BHouston [1st Dist.] 1994, no writ).  A trial court may consider only the summary
judgment evidence on file at the time of the hearing or filed thereafter and
before judgment with permission of the court. 
Tex. R. Civ. P. 166a(c); United
Blood Servs., 907 S.W.2d at 
609.  Accordingly, on motion for
new trial after summary judgment is granted, the trial court may generally
consider only the record as it existed prior to granting the summary
judgment.  United Blood Servs., 907
S.W.2d at 609. 

A nonmovant may rely on the summary judgment
evidence referenced or set forth in the movant's own motion in order to raise a
fact issue.  Tex. R. Civ. P. 166a(c); Fisher v. Yates, 953 S.W.2d
370, 383 (Tex. App.BTexarkana 1997), pet.
denied sub nom., Yates v. Fisher, 988 S.W.2d 730 (Tex. 1998)
(per curiam).  Because West did not file
a response to MT=s motion for summary judgment, our review is
limited to the summary judgment evidence submitted by MT. 

MT=s summary judgment evidence included: 1) documents
from West=s
medical records; 2) excerpts from West=s deposition; 3) affidavits from three MT
employees, Anthony ATony@ Rodriguez, Margarito AMayo@ Herrera, and Bobby Davis; 4) excerpts from the
deposition of Dr. Tone Johnson, West=s treating physician; 5) the affidavit of Mack
Rodriguez from MT; 6) Texas Workforce Commission documents concerning West; 7)
excerpts from Antonia West=s deposition; 8) the affidavit of Rene
Rodriguez,  MT=s counsel; 9) billing statement from the office of
Rene Rodriguez regarding West=s lawsuit; and 10) a letter dated May 22, 1996 from
Rene Rodriguez to West=s attorney. 








In support of its argument that West cannot
establish the causation element, i.e., that he was terminated for filing
a workers=
compensation claim, MT points to the following:

1) West was released to full duty by his surgeon on
March 10, 1998;

2) West did not seek further medical attention
until April 2, 1998;

3) during that time, he made no attempt to contact
his employer or supervisors;

4) MT filled West=s position as allowed by law; and 

5) West did not dispute on appeal the TWC finding
that he was Adischarged
due to . . . medically verifiable inability to work.@








An employer is permitted to terminate an employee
who sustains an on-the-job injury if that employee can no longer perform the
essential functions of his job.  Jenkins,
16 S.W.3d at 441.  The summary
judgment evidence[8]
includes a letter dated April 8, 1998 from West=s surgeon, Dr. Alberto Belalcazar, to the Texas
Workers=
Compensation Insurance Fund (TWCIF), which states that West was Afully healed and ready to go back to work @ when seen on a follow-up visit on March 10,
1998.  The evidence also includes a
letter dated the following day, April 9, 1998, from West=s treating physician, Dr. Tone Johnson, to the
TWCIF reflecting concern that West continued to suffer pain related to his
hernia operation.  In the April 9 letter,
Dr. Johnson recommends that West remain on light duty restrictions for a few
more days before returning to full duty.[9]  Dr. Johnson released West to return to work
on April 13, 1998.  It is undisputed that
West returned to work on April 13, 1998.

The affidavit of Mack Rodriguez states, in part:

I was also aware that Dr. Alberto Belacazar [sic],
Randy West=s
surgeon, had released him to full duty without restrictions on March 10,
1998.  Sometime after receiving this
information from the Texas Workers Compensation Insurance Fund, I spoke to
Cathy Helms, Benefits Services Department- T.W.C.I.F., about this
situation.  After conversing with Cathy
Helms, I filled Randy West=s position with another employee.  I also sent the attached letter to the Texas
Workforce Commission.

 

The Aattached letter@ is a Texas Workforce Commission form, completed by
Mack Rodriguez, which includes the following explanation regarding West=s termination: 

Employee left on January 28, 1998 to have surgery
on extended workmans [sic] compensation surgery.  Mr. West never once checked in to up date us
on his progress or as to when he might return or if he would return.  We called your office to check on our options
and were informed that if we could not hold the position open any longer, we
should fill the position & if and when he returned if the position was
filled he would have the opportunity to apply for unemployment benefits which
would not be chargea[illegible] to us. 
If you find that this is not the case, please inform me and I will
review our position.  Thank you for your
cooperation.

 








Thus, MT=s position appears to be that West was released to
return to work by his surgeon on March 10, 1998 and failed to return until
approximately a month later, on April 13, 1998. 
Although the summary judgment evidence reflects that Dr. Johnson did not
release West to return to work until April 13, 1998, there is no evidence that
MT knew in late March or early April that West had not been released by Dr.
Johnson.  Mack Rodriguez=s affidavit simply states that after West=s surgery, he Anever contacted any of his supervisors of his
medical status.@  It also
states Rodriguez filled West=s position Asometime after@ learning of West=s release by his surgeon.  Even if MT knew that West had not been
released by Dr. Johnson, there is no evidence controverting MT=s assertion that it filled West=s position sometime after learning he had been
released by his surgeon and had not returned to work.  Thus, we hold that MT=s summary judgment evidence established a
legitimate, non-discriminatory reason for West=s termination. 
See Jenkins, 16 S.W.3d at 436. 
Because West failed to produce controverting evidence of MT=s retaliatory motive, see id., we hold that
the trial court properly granted summary judgment on West=s retaliation claim. 

Defamation 

We next address West=s contention that the trial court erred in granting
summary judgment with regard to his defamation claim.  We hold that it did not.

The statements which form the basis of West=s defamation claim were made in a letter dated May
29, 1998 from Rene Rodriguez, MT=s counsel, to West=s counsel.[10]  West contends that the statements, which
charge West with fraudulently obtaining workers= compensation benefits, are defamatory.








The granting of a summary judgment is proper if the summary judgment
proof establishes as a matter of law that there is no genuine issue of material
fact as to one or more of the essential elements of the plaintiff's causes of
action, or whether the defendant has established all elements of an affirmative
defense.  Walker v. Harris, 924
S.W.2d 375, 377 (Tex. 1996); Krishnan v. Law Offices of Preston Henrichson,
P.C., 13-01-204-CV, 2002 Tex. App. LEXIS 5549, at *10 (Tex. App.BCorpus Christi July 25, 2002, no pet. h.)
(designated for publication).  Summary
judgment may be obtained in a defamation case upon a proven plea of
privilege.  Krishnan, 2002 Tex.
App. LEXIS 5549, at *11.

AAn attorney=s statements made during litigation are not
actionable as defamation, regardless of negligence or malice.@  Watson
v. Kaminski, 51 S.W.3d 825, 827 (Tex. App.BHouston [1st Dist.] 2001, no pet.); see also
Krishnan, 2002 Tex. App. LEXIS 5549, at *12; Crain v. Smith, 22
S.W.3d 58, 62-63 (Tex. App.BCorpus Christi 2000, no pet.).  The judicial proceeding privilege applies to
letters written by lawyers to potential defendants prior to suit.   Krishnan, 2002 Tex. App. LEXIS 5549, at
*12; Crain, 22 S.W.3d at 62.  To
trigger the absolute privilege, there must be a relationship between the
correspondence and the proposed or existing judicial proceeding, which decision
is made by considering the entire communication in context, resolving all
doubts in favor of its relevancy.  Krishnan,
2002 Tex. App. LEXIS 5549, at *12-13; Crain, 22 S.W.3d at 63.  Resolving all doubt in favor of the
communication=s relevancy to a pending and contemplated
proceeding, see Krishnan, 2002 Tex. App. LEXIS 5549, at *16, we conclude
that the statements in the letter were absolutely privileged, and cannot
constitute the basis for a defamation claim against MT or its counsel.  Accordingly, we hold that the trial court did
not err in rendering summary judgment in MT=s favor with regard to the defamation claim.

Sanctions 

In his fourth issue, West challenges the trial
court=s
order imposing sanctions pursuant to rule 13 because (a) it fails to state
grounds for holding West=s counsel in contempt and (b) fails to state with
particularity good cause for finding that the pleadings upon which sanctions
are based are groundless and frivolous and brought for purposes of
harassment.  See Tex. R. Civ. P. 13.  








MT argues that by failing to object to the form of
the sanctions order, West waived any error concerning the sanctions order.  However, in West=s motion for new trial and supplemental motions for
new trial,[11]
he denies that his claims constitute groundless pleadings.  Specifically, he addresses the evidence
supporting his claims of retaliation and defamation and argues that his claims
are meritorious.  Thus, we construe West=s complaint as challenging both the form of the
order by questioning its failure to meet the particularity requirements of rule
13, and the sufficiency of the evidence to support the imposition of
sanctions.  We hold that West=s challenge to the sanctions order was preserved
through his motion for new trial.  See
Gorman v. Gorman, 966 S.W.2d 858, 867 (Tex. App.BHouston [1st Dist.] 1998, pet. denied) (party
against whom sanctions were imposed preserved complaint by filing motion for
new trial).  








A trial court's decision to impose sanctions is
reviewed for an abuse of discretion.  GTE
Communications Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993);
Home Owners Funding Corp. of Am. v. Scheppler, 815 S.W.2d
884, 889 (Tex. App.BCorpus Christi 1991, no writ).  A trial court abuses its discretion when it
acts without reference to any guiding legal rules or principles or misapplies
the law to the established facts of the case. 
Scheppler, 815 S.W.2d at 889 (citing Downer, 701 S.W.2d at
241-42).  In determining whether
sanctions are appropriate, the trial court must examine the facts available to
the litigant and the circumstances existing when the litigant filed the
pleading.  Alejandro v. Bell, No.
13-01-00266-CV, slip op. at *12, 2002 Tex. App. LEXIS 6164, at *18 (Tex. App.BCorpus Christi August 22, 2002, no pet. h.)
(designated for publication).  Rule 13
requires that the trial court provide notice and hold an evidentiary hearing to
make the necessary factual determinations about the motives and credibility of
the person filing the groundless pleading. 
Id. (citing New York Underwriters Ins. Co. v. State Farm Mut.
Auto. Ins. Co., 856 S.W.2d 194, 205 (Tex. App.BDallas 1993, no writ); Scheppler, 815 S.W.2d
at 888-89)).  Without such a hearing, the
trial court has no evidence before it to determine that a pleading was filed in
bad faith or to harass.  Id.  Imposing sanctions without the requisite
notice and hearing also violates the requirements of due process.  Id. 


MT=s motion for sanctions alleges only that West=s lawsuit is groundless and brought Ain bad faith and for purposes of harassment.@  At the
hearing in which the trial court granted summary judgment and sanctions, the
record reflects no discussion of any allegedly sanctionable conduct.  No evidence supporting the imposition of
sanctions was introduced.  Similarly, at
the hearing on West=s motion for new trial, the parties focused on West=s argument that he did not receive notice of the
hearing and was thus entitled to a new trial; there was no discussion of the
sanctions issue and no evidence to support sanctions was introduced.  Because MT presented no evidence from which
the trial court could determine that West filed his lawsuit in bad faith or for
purposes of harassment, we hold the trial court abused its discretion in
ordering sanctions in the amount of $21,095 against West=s counsel. 
We sustain West=s fourth issue.  


                                                      Conclusion








We hold the trial court abused its discretion in
imposing sanctions against West=s counsel. 
Therefore, we REVERSE the trial court=s order imposing sanctions against West=s counsel, and otherwise AFFIRM the trial court=s judgment.  


 

                                                               
                                                             

                                                                    LINDA
REYNA YAÑEZ     

                                                                   Justice

 

                                                           
       

 

Retired Chief Justice Seerden[12]
not participating.

 

Publish.

Tex. R. App. P. 47.3

 

Opinion delivered and filed this the

30th day of August, 2002.

                                                

 

  

 

                   


 

 

 

 

 

 











[1]Retired Chief Justice
Robert J. Seerden, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t
Code Ann. ' 74.003 (Vernon 1998).





[2]Although
both are appellants, AWest@
refers to Randy West and encompasses the claims of both parties.  





[3]See
Tex. Lab. Code Ann. ' 451.001 (Vernon 1996)
(prohibiting an employer from discharging an employee for filing a workers=
compensation claim in good faith).  





[4]West
also filed a ASupplemental@
motion on February 16, 1999 and a second ASupplemental@
motion on March 5, 1999.





[5]See
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388,
133 S.W.2d 124, 126 (1939) .  





[6]
See Tex.
R. Civ. P. 166a(c), 251.





[7]See
Bob E. Carpenter v. Cimarron Hydrocarbons Corp.,
45 Tex. Sup. Ct. J. 1031, 2002 Tex. LEXIS 120, at *11 (July 3, 2002) (citing Medina
v. Western Waste Indus., 959 S.W.2d 328, 330 (Tex. App.BHouston
[14th Dist.] 1997, pet. denied)).    





[8]The only summary judgment
evidence in the record is MT=s summary judgment
evidence.  Therefore, all references to Athe summary judgment
evidence@ are to MT=s evidence.   





[9]In his deposition
testimony, Dr. Johnson also testified that on April 8, 1998, he placed West on Alight duty@ for six months because of
pain associated with his work-related hernia operation and a non-work-related
injury to his arm.   





[10]The
letter was attached as an exhibit to West=s
original petition and to his ASupplemental
Motion to Withdraw Order Granting Summary Judgment and Rule 13 Sanctions and
Motion for New Trial,@ filed February
16, 1999. The letter was not included in the summary judgment evidence attached
to MT=s motion for
summary judgment.  Included in MT=s
summary judgment evidence, however, was an affidavit of Rene Rodriguez, MT=s
counsel, in which he states that the May 29, 1998 letter was mailed only to
West=s counsel and
Dr. Johnson.    





[11]West filed a AMotion to Withdraw Order
Granting Summary Judgment and Rule 13 Sanctions and Motion for New Trial@ on February 5, 1999.  He filed a ASupplemental@ motion on February 16,
1999 and a second ASupplemental@ motion on March 5,
1999.  





[12]Retired
Chief Justice Robert J. Seerden was a member of the panel which originally
heard this case when it was submitted on May 3, 2000.  Following his retirement on December 31,
2000, he was assigned to this Court by the Chief Justice of the Supreme Court
of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998) to Acomplete the
adjudication of any and all causes assigned to a panel of which [he was] a member@
prior to his retirement.  Justice Seerden
has chosen not to participate in this Court=s decision.