IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2009

No. 08-10630

RICHARD FRAME; WENDELL DECKER; SCOTT UPDIKE; J N, a minor, by his next friend and mother Gabriela Castro; MARK HAMMAN; JOEY SALAS

Plaintiffs - Appellants

v.

CITY OF ARLINGTON, A Municipal Corporation

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiffs are persons with disabilities who depend on motorized wheelchairs for mobility. They allege that the City of Arlington, by failing to make the City's curbs, sidewalks, and certain parking lots ADA-compliant, has violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act. The district court dismissed their complaint on the basis that their claims were barred by the applicable two-year statute of limitations. This appeal raises more than one issue of first impression—at least for this court. Initially, we must decide whether Title II of the ADA authorizes the plaintiffs' claims; specifically, whether the City's curbs, sidewalks, and parking lots constitute a service,

program, or activity within the meaning of Title II. Because we decide Title II authorizes the plaintiffs' claims, we next ask whether those claims are subject to a statute of limitations and, if so, when the claims accrued. We hold that the plaintiffs' claims are subject to a two-year statute of limitations, and that they accrued upon the City's completion of any noncompliant construction or alteration. We further conclude, however, that it was the City's burden to prove accrual and expiration of any limitations period. Because the district court erred in requiring the plaintiffs to prove that their claims had not expired, we must remand for further proceedings.

I.

This appeal comes to us from the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We therefore accept the factual allegations of the plaintiffs' complaint as true. *See, e.g., Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The plaintiffs filed their complaint in the district court on July 22, 2005, and thereafter amended it three times. Accordingly, for facts we refer to the plaintiffs' final complaint, as amended.

The plaintiffs are individuals who reside in Arlington who have mobility impairments that require that they use motorized wheelchairs. They point to more than one hundred curbs and poorly maintained sidewalks in Arlington that they allege make their travel impossible or unsafe. They also point to at least three public facilities lacking adequate handicap parking. Count 1 of the plaintiffs' complaint alleges violations of Title II of the ADA. *See* Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.* (prohibiting public entities from discriminating on the basis of disability).[1] Count 2 of the plaintiffs' complaint alleges violations

---

[1] Count 1 also alleges that the City has violated 28 C.F.R. § 35.150 by failing to implement a plan to transition its curbs, sidewalks, and parking lots to ADA compliance. 28 C.F.R. § 35.150 is a regulation promulgated by the Attorney General which requires that public entities develop transition plans to achieve compliance with Title II. *See* ADA Accessibility Guidelines, 28 C.F.R.§ 35.150(d)(1) (requiring public entities to draft transition

of Section 504 of the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of disability. *See* Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The plaintiffs do not seek monetary damages; they only ask for an injunction requiring the City to bring its curbs, sidewalks, and parking lots into ADA compliance.

The City of Arlington moved to dismiss the complaint, asserting three grounds for dismissal: (1) that the claims were barred by the applicable two-year statute of limitations; (2) that the plaintiffs lacked standing to invoke Title II, the ADA Accessibility Guidelines, or Section 504 of the Rehabilitation Act; and (3) that the alleged facts did not state a legal claim of discrimination.

The district court granted the City's motion on the ground that the plaintiffs' claims were barred by the applicable two-year statute of limitations. The district court held that the plaintiffs' claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs' complaint did not point to dates of noncompliant construction or alteration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs' claims.

On appeal, the plaintiffs argue that their claims accrued on the date individual plaintiffs encountered a noncompliant barrier–not on the date the City completed a noncompliant construction or alteration. In the alternative, the plaintiffs argue that statutes of limitation do not apply to claims for injunctive relief; that the noncompliant curbs, sidewalks, and parking lots are continuing

---

plans). The district court dismissed, citing *Alexander v. Sandoval*, 532 U.S. 275 (2001), the plaintiffs' claims under 28 C.F.R. § 35.150 because it concluded the plaintiffs had no private right of action to enforce that regulation. *See id.* at 291 (implementing regulation, on its own, cannot create private right of action); *see also Iverson v. City of Sandusky*, 452 F.3d 94, 99-100 (1st Cir. 2006) (no private right of action to enforce 28 C.F.R. § 35.150); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913-15 (6th Cir. 2004) (same). The plaintiffs do not appeal that ruling and therefore we do not address it.

violations of the ADA that relieve them of the limitations bar; and that dismissal was improper because the City, and not the plaintiffs, had the burden to establish when the plaintiffs' claims accrued and the limitations period expired.

We consider each of the plaintiffs' arguments separately. But before we reach the limitations and accrual issues, we resolve whether Title II otherwise authorizes the plaintiffs' claims.

## II.

We review a Rule 12(b)(6) dismissal *de novo. See, e.g., Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2007). "The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (citing *Sloan v. Sharp*, 157 F.3d 980, 982 (5th Cir. 1998)). The interpretation of a statute is a question of law we also review *de novo. See, e.g., Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

## A.

The immediate question is whether Title II of the ADA authorizes the plaintiffs' claims, that is, whether the City's curbs, sidewalks, and parking lots are a service, program, or activity within the meaning of Title II. For reasons we explain, we decide that they are.

The ADA was passed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).[2] The focus of the instant appeal is on Title

---

[2] The ADA was modeled after the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of their disability. *See* 29 U.S.C. § 794 ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance."). The ADA expressly provides that the remedies, procedures, and rights available under the Rehabilitation Act also apply to the ADA, and thus jurisprudence interpreting either statute is applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000), *cert. denied,* 531 U.S. 959 (2000). For simplicity's sake, we refer only to the ADA claim.

II of the ADA, which prohibits public entities from discriminating against individuals on the basis of disability. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Title II is enforceable through a private cause of action, *see, e.g., Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002), and we have held that to make a prima facie case under Title II a plaintiff must show: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). There is no dispute that the City is a public entity, or that the plaintiffs here have qualifying disabilities.[3] There is, however, a dispute over whether curbs, sidewalks, and parking lots are encompassed within services, programs, or activities for which a public entity has liability under Title II.

Title II does not define "services, programs, or activities." Although we have not decided whether curbs, sidewalks, or parking lots fall within Title II's coverage, other circuits have interpreted "services, programs, or activities" broadly.

For example, the Ninth Circuit has specifically held that public sidewalks are a service, program, or activity within the meaning of Title II, by reasoning that "services, programs, or activities" can be construed as "'anything a public

---

[3] A public entity is "any [s]tate or local government" or "any department, agency, special purpose district, or other instrumentality of a [s]tate or [s]tates or local government." 42 U.S.C. § 12131. A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1).

entity does.'" *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (quoting *Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997), *aff'd*, 524 U.S. 206 (1998))). The focus of its inquiry, the court wrote, was not on whether a sidewalk can be characterized as a service, program, or activity, but on whether it is "'a normal function of a government entity.'" *Id.* (quoting *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999) (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44 (2d Cir. 1997))). The court concluded that maintaining public sidewalks is "without a doubt something that the [City] 'does,'" and public sidewalks, therefore, fall within the scope of Title II. *Id.* (quotation marks and citation omitted).

The Sixth Circuit has also broadly held that "the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). Although that court has not specifically decided that sidewalks constitute "services, programs, or activities" within the meaning of Title II, it has held that a plaintiff has a private cause of action under Title II to enforce 28 C.F.R. § 35.151, a regulation that establishes accessibility standards for curbs and sidewalks. *Ability Ctr. of Greater Toledo*, 385 F.3d at 906-07. The plaintiffs in that case complained that the City of Sandusky failed to comply with 28 C.F.R. § 35.151's accessibility standards when it replaced public curbs and sidewalks. *Id.* at 903. The court held that the plaintiffs had a private cause of action to enforce 28 C.F.R. § 35.151 because the regulation effectuates a mandate of Title II; Title II, it reasoned, not only prohibits intentional discrimination, but also requires that public entities make certain accommodations in the course of providing public services including, in that case, the maintenance of public sidewalks. *Id.* at 906-07.

Finally, the Second and Third Circuits have also read "services, programs, or activities" broadly. The Second Circuit has called the language "a catch-all phrase that prohibits all discrimination by a public entity, regardless of context," and has counseled against "hair-splitting arguments" over what falls within its reach. *Innovative Health Sys.*, 117 F.3d at 45. The Third Circuit has similarly held the language "is intended to apply to anything a public entity does." *Yeskey*, 118 F.3d at 171 (quotation marks and citation omitted).

It is not necessary for us to conclude, as the Ninth Circuit did, that Title II's "services, programs, or activities" includes "anything a public entity does." It is enough for present purposes that we agree that "services, programs, or activities" is at least broad enough to include curbs, sidewalks, and parking lots. Streets and sidewalks, as well as public parking areas, are reasonably understood to be services within the meaning of Title II. Absent a statutory definition or definitive statutory clue, a word "must be given its ordinary, 'everyday meaning.'" *See United States v. Hildenbrand*, 527 F.3d 466, 476 (5th Cir. 2008) (quoting *Watson v. United States*, 128 S.Ct. 579, 583 (2007)). Among the definitions for "service" is "a facility supplying some public demand." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1137 (11th ed. 2003). When, for instance, a public entity provides a sidewalk, or its accompanying curbs, or public parking lots, it provides "a facility supplying some public demand." Because providing curbs, sidewalks, and parking lots is a service within the ordinary, "everyday meaning" of that word, we hold that those facilities also constitute a "service" within the meaning of Title II.

This understanding is consistent with the legislative history of the ADA, which indicates that Congress envisioned that the ADA would require that local and state governments maintain disability-accessible sidewalks. *See* H.R.Rep. No. 101-485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 ("The employment, transportation, and public accommodation sections of this Act

would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets."). In the light of that legislative intent, along with other circuits' broad interpretation and our own appreciation of the plain meaning of the word services, we conclude that curbs, sidewalks, and parking lots are "services, programs, or activities" within the meaning of Title II. Accordingly, Title II authorizes the plaintiffs' claims.

## III.

Now we are prepared to address whether the plaintiffs' claims are nevertheless time-barred. Neither Title II of the ADA nor the Rehabilitation Act provides a limitations period, and the general federal statute of limitations does not apply to either statute.[4] We have previously held that the Texas two-year statute of limitations for personal injury claims applies in Title II cases filed in Texas federal courts. *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683-84 (5th Cir. 1998); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp. 2007). The district court therefore applied the correct statute of limitations. The plaintiffs argue, however, that the district court erred in ruling their claims accrued, and the statute began to run, on the date the City completed any noncompliant construction or alteration, instead of on the date the plaintiffs encountered a noncompliant barrier. The plaintiffs argue in the alternative that the statute of limitations does not apply to their claims because they seek only injunctive relief, and that noncompliant curbs, sidewalks, and parking lots are continuing violations of the ADA that relieve them of the limitations bar. We

---

[4] Title II adopts the remedies, procedures, and rights of the Rehabilitation Act. 42 U.S.C. § 12133. The limitations period in Rehabilitation Act cases is governed by 42 U.S.C. § 1988(a). That statute directs courts to apply federal law if it provides a limitations period or, if it does not, apply common law, as modified by state law, if it is not inconsistent with the Constitution or laws of the United States. *See, e.g., Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683-84 (5th Cir. 1998) (citing *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992)). For Title II claims courts borrow the state statute of limitations from the most analogous state law claim.

will first address the plaintiffs' alternative arguments before we address the issue of accrual. We conclude that neither of the plaintiffs' alternative arguments succeeds here.

## A.

First, we reject the plaintiffs' assertion that the statute of limitations does not apply to their claims because they seek only injunctive relief. The plaintiffs cite *Voices for Independence v. Pennsylvania Department of Transportation*, 2007 WL 2905887 (W.D. Pa.), a district court opinion that held a statute of limitations did not apply in an ADA case seeking only equitable relief. *Id.* at *16-17. That opinion, in addition to being nonbinding, is also unpersuasive in the light of the fact that courts regularly apply statutes of limitation to claims under Title III of the ADA, for which only injunctive relief is available.[5] *See, e.g., Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054-56 (8th Cir. 2003) (applying Minnesota's six-year statute of limitations to Title III claim for injunctive relief); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 n.2 (9th Cir. 2002) (holding ongoing violation brought Title III claim for injunctive relief within California's one-year limitations period); *Sexton v. Otis Coll. of Art & Design Bd. of Directors*, 129 F.3d 127, 127 (9th Cir. 1997) (applying California's one-year statute of limitations to Title III claim for injunctive relief); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (applying Illinois's two-year statute of limitations to Title III claim for injunctive relief). We ourselves have recently held that statutes of limitations apply to § 1983 actions that seek only injunctive relief. *See Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). We decline to treat the plaintiffs' Title II claims differently.

---

[5] Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000, for which there is only injunctive relief. 42 U.S.C. § 12188(a); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (Title II of the Civil Rights Acts of 1964 provides injunctive relief only).

B.

We also reject the plaintiffs' characterization of noncompliant curbs, sidewalks, and parking lots as continuing violations that bring their claims within the limitations period. The continuing violations doctrine, which typically arises in the context of employment discrimination, relieves a plaintiff of a limitations bar if he can show a series of related acts to him, one or more of which falls within the limitations period. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). We hesitate to extend that doctrine here, where the alleged violations are not related. A noncompliant curb, for instance, bears no relation to a noncompliant parking lot on the other side of the City. Furthermore, the concept of a continuing violation plainly is inconsistent with our ultimate holding in this case—which is that the noncompliant construction of a sidewalk constitutes the triggering accrual event for statute of limitations purposes.

In sum, the two-year statute of limitations applies to the plaintiffs' Title II claims, and the continuing violations doctrine does not.

IV.

We now turn to the crucial issue in this appeal, which also is one of first impression: whether the plaintiffs' claims accrued on the date the City completed a noncompliant construction or alteration, or on the date the plaintiffs encountered a noncompliant barrier. The district court held that the plaintiffs' claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs' complaint did not allege dates of noncompliant construction or alteration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs' claims.

For reasons we explain, we agree with the City that the plaintiffs' claims accrued upon the completion of a noncompliant construction or alteration.

However, we agree with the plaintiffs that the City had the burden to prove its affirmative defense that the limitations period had expired with respect to each of the plaintiffs' claims.

A.

Although we borrow the statute of limitations for plaintiffs' Title II claims from state law, federal law governs the claims' accruals. *Jenson v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988). A claim ordinarily accrues when a plaintiff has "'a complete and present cause of action'" or, stated differently, "when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (citations omitted)); *Walker*, 550 F.3d at 414. A statute may specify an accrual date by "explicit command." *See TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001). An accrual date may also be implied by "the structure and text of the particular statute." *Id.* at 27; *Disabled in Action of Penn. v. Southeastern Penn. Transp.*, 539 F.3d 199, 209 (3d Cir. 2008) (structure and text of 42 U.S.C. § 12147(a) imply that claims brought under Title II to compel ADA compliance at public transportation facilities accrue upon the completion of alterations to facilities). Title II, however, neither explicitly commands, nor implies, an accrual date for the plaintiffs' claims.

In the absence of either explicit or implicit statutory guidance, the plaintiffs urge us to apply the discovery rule, under which a claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action. *See, e.g., Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006). Under the discovery rule, the plaintiffs' claims would have accrued on the date individual plaintiffs encountered a noncompliant curb, sidewalk, or parking lot.

The City urges a rule that instead attaches accrual to the date a noncompliant construction or alteration is complete. That rule focuses on the discriminatory act, instead of discovery of the discriminatory effect. *See*

*Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful" (citing *Del. St. Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). The City argues that attaching accrual to an individual plaintiff's discovery effectively would eliminate the applicability of any statute of limitations in like ADA cases, and would therefore subject municipalities to unlimited and continuing liability.

We think the City's argument is more persuasive. First, we note that there is no default federal discovery rule, and nothing requires that we apply it in this case. The United States Supreme Court has declined to adopt a general federal discovery rule, *TRW, Inc.*, 534 U.S. at 27 ("[L]ower federal courts 'generally apply a discovery accrual rule when a statute is silent on the issue.' But we have not adopted that position as our own." (quotation marks and citations omitted)); *see also id.* at 37 (Scalia, J., concurring) ("injury-discovery rule" is "bad wine of recent vintage"), and has limited its own use of the discovery rule to cases alleging fraud or medical malpractice. *Id.* (citing *Bailey v. Glover*, 21 Wall. 342, 347-50 (1875) (fraud); *Urie v. Thompson*, 337 U.S. 163, 169-71 (1949) (latent medical injury claims under Federal Employers' Liability Act); *Kubrick*, 444 U.S. at 120 (medical malpractice claims under Federal Tort Claims Act)). Of course, what fraud and medical malpractice share in common is the risk that their injuries cannot be discovered until some time after the injurious act has passed. For such latent injuries "the cry for a discovery rule is loudest." *See, e.g., Rotella v. Wood*, 528 U.S. 549, 555 (2000). Here, however, the alleged ADA violations are not latent. The fact that a sidewalk does not have a curb cut, for instance, is not hidden, and that an individual plaintiff may not encounter the sidewalk within the limitations period does not somehow make the missing curb cut concealed from potential plaintiffs. *See Disabled in Action of Penn.*, 539 F.3d at 217 n.16 (expressing hesitation in applying discovery rule to plaintiffs' Title II claim alleging city's subway station did not

include elevators because there was "nothing latent" about "the fact that newly renovated subway stations do not include elevators"). We therefore think it is inappropriate to apply a discovery rule here.

Second, although it is true that we have applied the discovery rule in ADA cases alleging employment discrimination, *see, e.g., Holmes*, 145 F.3d at 684; *Burfield v. Brown, Moore & Flint*, 51 F.3d 583, 589 (5th Cir. 1995), the discovery date in those cases coincided with the date of the alleged discriminatory act. In *Burfield*, for example, we held that the plaintiff's claim accrued on the date he received official notice of termination from his employer. *Burfield*, 51 F.3d at 589. In *Holmes*, we held that the plaintiff's claim accrued on the date he first received notice of termination, not on the date his employer later reaffirmed termination. *Holmes*, 145 F.3d at 684-85. Because the dates of the plaintiff's discovery and of the alleged discriminatory act (termination) were the same, those cases offer no rationale or guidance in the context of our case. Under the facts of those cases, for instance, both the plaintiff and his defendant-employer are aware that the limitations period will commence to run on a definite and singular date; it makes no difference either to the plaintiff or the defendant whether the discovery rule is applied because the result is the same. The discovery rule applied to the facts of this case, however, would forever deny the City a definite limitations period, because every future plaintiff's discovery of a noncompliant sidewalk would reset the limitations clock.

We come to our final point, and that is consideration of the policies underlying statutes of limitations. Statutes of limitations exist to protect defendants against stale claims. *See, e.g, Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) ("The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."). If the discovery rule were applied in

this case, hereafter every new potential plaintiff would constantly retrigger the public entity's liability for any noncompliant sidewalk, without regard to the publically known date of its completion. As the City has pointed out, the effect would be an evisceration of the statute of limitations defense in like ADA cases and unlimited exposure to liability. We think the wiser, more reasonable, and–in the words of *Order of Railroad Telegraphers*– more just approach, is a rule under which a public entity is liable for a noncompliant construction or alteration, but only during a definite and single limitations period.

Accordingly, we hold that the plaintiffs' claims accrued on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Under this rule, plaintiffs may hold a public entity liable for construction or alterations that do not comply with the ADA, but only within the time period specified by the applicable statute of limitations. This holding, however, is not the end of our analysis.

## B.

Finally, we must consider whether outright dismissal of the complaint was improper, which depends upon who had the burden to establish the expiration of the limitations period. As a practical matter, the City, and not the plaintiffs, is in the best position to prove accrual. The plaintiffs could not point to dates of construction or alteration within the two years preceding the complaint's filing date, July 22, 2005, without having engaged in discovery with the City. Regardless, it is the City's burden to prove accrual. Under Federal Rule of Civil Procedure 8, the party that asserts an affirmative defense, including the expiration of a limitations period, bears the burden of proof. FED. R. CIV. P. 8 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations[.]"); *see also In re Hinsley*, 201 F.3d 638, 644-45 (5th Cir. 2000) (Under Texas law, "[a] party asserting limitations must establish the applicability of the limitations statute,

but must, as well, prove when the opponent's cause of action accrued[.]" (quoting *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App. 1984, writ refused n.r.e.)). The district court erred in burdening the plaintiffs with proving dates of construction or alteration. The district court's dismissal on the basis that the plaintiffs had not alleged accrual within the two years preceding July 22, 2005, was therefore improper. We therefore must vacate the judgment of dismissal and remand. The City will be required to establish its affirmative defense that the plaintiffs' claims have expired in a manner consistent with this opinion.

## V.

To summarize, we hold that curbs, sidewalks, and parking lots constitute a service, program, or activity within the meaning of Title II of the ADA, and that the plaintiffs have established claims under Title II. Although the district court correctly held both that the plaintiffs' claims were subject to a two-year statute of limitations, and that they accrued on the date the City completed any noncompliant construction or alteration, it improperly burdened the plaintiffs with proving accrual within the two years preceding the filing of their complaint. We therefore VACATE the district court's judgment of dismissal and REMAND for such further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

PRADO, Circuit Judge, concurring in part and dissenting in part:

In holding that the plaintiffs' cause of action for their Americans with Disabilities Act ("ADA") claim accrues when the City completes the noncompliant construction, today's majority ignores the plain text of the statute, fails to acknowledge the conflict it creates with traditional rules of standing, and creates a rule at odds with the ADA's broad remedial purpose. I recognize the merits of the majority's position and sympathize with the majority's goal of ensuring that the City is not liable for stale claims. Nevertheless, I conclude that the better rule—and the one that best comports with the text and purpose of the ADA—is that a cause of action accrues when a plaintiff suffers an injury under the Act based on that plaintiff's actual (as opposed to conjectural) inability to traverse the noncompliant sidewalk or other facility. Therefore, with great respect for my colleagues, I must dissent.[1]

I.

The main issue in this case is the purely legal question of when a plaintiff's claim for injunctive relief under Title II of the ADA accrues.[2] There are two possibilities: the claim accrues either (1) when the City completes the inaccessible construction or alteration or (2) when the plaintiff actually encounters the noncompliant sidewalk or other facility.

In choosing the earlier accrual date, the majority makes a significant legal misstep: it fails to identify precisely when the plaintiffs *in this case* suffered an injury. That, to me, is the crux of the issue. Comporting with our general

---

[1] I concur in Parts I and II of the court's opinion.

[2] The majority concludes that a statute of limitations applies to a claim for injunctive relief under Title II of the ADA. *But see Voices for Independence v. Pa. Dep't of Transp.*, No. 06-78, 2007 WL 2905887, at *16 (W.D. Pa. Sept. 28, 2007) ("Defendants' statute of limitations defense is somewhat misplaced in light of the fact that Plaintiffs are seeking only equitable relief here."). Because I believe that even if a statute of limitations applies, it would begin to run only once the plaintiff actually encounters a noncompliant sidewalk or other facility, I merely assume the applicability of a statute of limitations to claims for injunctive relief. I would leave the full analysis of this issue for another day.

16

approach to claim accrual, a plaintiff's claim accrues when the plaintiff suffers an injury. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (noting that "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured'" (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). Under the text of the ADA provision at issue, an injury occurs when the plaintiff actually suffers exclusion from or denial of a service, program, or activity of a public entity because of a disability. *See* 42 U.S.C. § 12132. The majority's discussion of the discovery rule—which can postpone the running of a statute of limitations for a prior injury—is thus misplaced and unnecessary. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 214 (3d Cir. 2008) ("[T]he district court erred in applying the discovery rule to establish when [the plaintiffs'] claims accrued before first determining, per the terms of § 12147(a), when [the plaintiffs'] alleged injuries occurred. These inquiries are analytically distinct."). Instead, we should focus on when the plaintiffs in this case actually suffered an injury under the ADA.

As the majority notes, "[a] claim ordinarily accrues when a plaintiff has 'a complete and present cause of action' or, stated differently, when 'the plaintiff can file suit and obtain relief.'" Maj. Op. at 11 (quoting *Wallace*, 549 U.S. at 388). Only congressional guidance can allow us to deviate from this general rule. Indeed, the Supreme Court has admonished that "[w]hile it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). As the Supreme Court has further explained, "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not

become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

A plaintiff does not have a complete and present cause of action and cannot file suit and obtain relief until, inter alia, he or she has standing, which in turn requires the plaintiff to suffer an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, an essential question (and one I think the majority overlooks) is when these particular plaintiffs suffered an injury in fact.

One need only look to the text of the ADA to answer this question. The provision at issue, 42 U.S.C. § 12132, provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The focus of the statute is on an individual with a disability *being excluded from or denied* the benefits of services, programs, or activities. Although the City's wrongful construction is a general discriminatory act against all disabled people, a particular disabled person would not suffer an injury in fact until he or she encounters that discriminatory exclusion or denial. Simply put, there cannot be an injury under the ADA until the plaintiff actually suffers the exclusion or denial that the statute prohibits. Thus, to suffer an injury under Title II of the ADA, the qualified individual must have *actually encountered* the discrimination or *actually be deterred* from visiting the public accommodation because of exclusion from or denial of the benefits of a service, program, or activity. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has *actually* become aware of discriminatory conditions existing at a public accommodation, *and* is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." (emphasis

18

added)); *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) ("In the context of the ADA, awareness of discriminatory conditions, *and* the avoidance of a public accommodation because of that awareness, is injury in fact." (emphasis added)). A plaintiff would not have standing to bring suit against the City here unless that plaintiff had actually encountered the noncompliant sidewalk or other facility. Under the general rule for statutes of limitations, then, the claim does not accrue until this point.

Of course, Congress can specify precisely when the claim will accrue. The Third Circuit recently resolved a case involving a different provision of the ADA under such a scenario. *See Disabled in Action*, 539 F.3d 199. In that case, the public entity, the Philadelphia subway system, planned to make alterations to one of its subway stations but was not going to include an elevator. *Id.* at 205. A nonprofit group that seeks to eliminate discrimination against disabled people brought suit more than two years after learning of the subway system's plans but less than two years after the completion of the construction. *Id.* at 206. The parties agreed that the applicable statute of limitations was two years; thus, if the plaintiffs' cause of action accrued when they learned of the public entity's plans, their suit was untimely, but if it accrued at the completion of construction, then their suit fell within the statute of limitations. *Id.* at 208. The Third Circuit accepted the plaintiffs' argument that their claim did not accrue until the subway system had actually finished the construction without an elevator.[3] *Id.* at 209. The court based its decision on the language of the relevant statute, which provides that a public entity discriminates if it makes alterations to its

---

[3] The court did not discuss the issue in this case: whether the statute of limitations might accrue at some point *after* the public entity completes the construction. Indeed, the court's ruling allowed the plaintiffs' suit to proceed, so they did not need to seek the same rule that the plaintiffs do here.

transportation system that, *upon the completion of such alterations*, are inaccessible. *Id.* at 209-10 (citing 42 U.S.C. § 12147(a)). That is, the court construed the statute's language as stipulating when the injury occurred and therefore the cause of action accrued: "upon the completion of such alterations." *Id.* (citing 42 U.S.C. § 12147(a)).

Here, the plaintiffs assert a violation of a different portion of the ADA, 42 U.S.C. § 12132, which is the general prohibition against discrimination in the services, programs, or activities of a public entity. As the majority correctly explains, this includes the provision of accessible sidewalks. Based on a regulation implementing the ADA's mandates, a public entity must include curb cuts when undertaking new construction or alterations to a sidewalk. *See* 42 U.S.C. § 12134(a); 28 C.F.R. § 35.151(e)(1). Specifically, with respect to construction or alterations commenced after January 26, 1992, "Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway." 28 C.F.R. § 35.151(e)(1).

Notably, neither 42 U.S.C. § 12132 nor 28 C.F.R. § 35.151(e)(1) includes language suggesting that the injury occurs upon completion of the construction or alteration. Instead, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. One aspect of possible discrimination is a newly-constructed or altered sidewalk that does not include a curb cut. 28 C.F.R. § 35.151(e)(1). Much like the text of the statute informed the Third Circuit's decision in *Disabled in Action*, so too should the text of the ADA's general prohibition against discrimination inform our analysis. We should vary from the typical rule for claims accrual only for a particularly compelling reason, such as if the text or context of the statute at issue so compels. *See Bay Area Laundry*, 522 U.S. at 201. But that is not the

20

case here.  Indeed, the policies behind the ADA, as I discuss below, counsel us to adhere to the general rule in this case.

Construing the plaintiff's injury as occurring when that plaintiff actually encounters a noncompliant sidewalk or other facility makes logical and legal sense.  A plaintiff who simply *might* suffer an injury in the future based on the public entity's wrongful act does not have standing if the individual has no knowledge that he or she is being denied access because of a lack of a curb cut on a sidewalk.  For example, a disabled person who lives on the other side of town from the noncompliant sidewalk, does not learn of the noncompliant sidewalk, and will never encounter this sidewalk has not suffered an injury in fact under the ADA and would not have standing to file suit.  Standing is necessarily founded upon an actual injury, and in the context of 42 U.S.C. § 12132, an injury occurs when the disabled individual actually attempts to use (or is deterred from using) the noncompliant sidewalk.  *See HIP (Heightened Independence & Progress), Inc. v. Port Auth. of N.Y. & N.J.*, No. 07-2982, 2008 WL 852445, at *4 (D.N.J. Mar. 28, 2008) ("The re-opening of the Grove Street PATH Station, alone, did not injure Plaintiffs.  Only after Plaintiffs' members attempted to use the Grove Street PATH Station, and realized that it was not accessible to disabled persons, was an injury sustained.").

It follows that the actual denial of access constitutes a plaintiff's injury under the ADA; only then can a plaintiff have a "complete and present cause of action" to "file suit and obtain relief."  That is, based upon the statutory prohibition in the text of the ADA, the actual—as opposed to conjectural—denial of access triggers the running of the statute of limitations, particularly when the plaintiff is seeking only injunctive relief.  *See James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (noting that to have standing to seek injunctive relief, a plaintiff must show that he or she is "likely to suffer *future injury* by the

defendant and that the sought-after relief will prevent that future injury"
(emphasis added)).

The majority proceeds, however, as if a disabled person suffers an
injury—and therefore has a complete and present cause of action—once the City
finishes the construction. According to the majority, the City's wrongful act
triggers the statute of limitations. But 42 U.S.C. § 12132 focuses not on the
City, but on a qualified individual who is being excluded from or denied the
benefits of a service, program, or activity. Indeed, the majority acknowledges
that to prove a prima facie case under Title II of the ADA, the plaintiff must
show that, inter alia, he or she is "*being denied* the benefits of services,
programs, or activities." Maj. Op. at 5 (citing *Melton v. Dallas Area Rapid
Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)) (emphasis added). The use of the
gerund "being" signifies that the plaintiff must show that he or she is suffering
a *present or future* injury to obtain injunctive relief. If the plaintiff never
encounters the noncompliant sidewalk (or is not actually deterred from accessing
it), then he or she is not *being* excluded from or denied the benefits of anything.
*See HIP (Heightened Independence & Progress), Inc.*, 2008 WL 852445, at *4.

It is not as if the City's construction injured the plaintiff but the plaintiff
did not understand the effects of the City's wrongful act or recognize the injury;
instead, the plaintiff does not suffer an injury at all until he or she physically
encounters, or actually learns of and is deterred from attempting to access, a
noncompliant sidewalk. A lack of accessibility in the abstract is not enough for
a disabled plaintiff to have standing, as that would be a conjectural harm. *See,
e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *cf. Pickern*, 293 F.3d at
1136-37. Put differently, a denial of access is not a later consequence of an
injury but rather is the injury itself. The plaintiffs here recognized this when
they described the injury in their complaint as the "frequent[] deni[al of] the full
and equal use and enjoyment of Arlington's pedestrian rights-of-way while

22

conducting daily activities." The complaint also details the specific barriers to access each plaintiff suffers every day and affirms the plaintiffs' desire to travel to various inaccessible destinations in the future.

The majority fails to recognize that the City's wrongful act and the plaintiffs' injury occur at different points in time. Although the majority rejects the Western District of Pennsylvania's analysis in *Voices for Independence* as unpersuasive, that decision correctly separated the wrongful act from the plaintiff's injury. Under the same facts as here, the court stated,

> While we agree with Defendants that it is acts of "new construction" and/or "alterations" which trigger a public entity's *duty* to install the requisite curb cuts and, while we further agree that the failure to install the required curb cuts constitutes *an act of discrimination* under Title II of the ADA, we conclude that Defendants' statute of limitations argument misses the mark. The issue of when a defendant's duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiff's injury arises or when his cause of action begins to accrue.

2007 WL 2905887, at *13. We should not conflate the City's wrongful act with the plaintiffs' injury stemming from that wrongful act. These are two separate and distinct concepts. Although a wrongful act and an injury often occur at the same time, they are not concurrent here. The City acts unlawfully when it builds a noncompliant sidewalk, but the individual plaintiffs are not injured until they actually suffer the barrier to access. Because there is a private right of action to vindicate one's rights under Title II of the ADA, and because a plaintiff must actually be excluded from or denied the benefits of the sidewalks or other facilities to suffer an injury and therefore have a cause of action under the text of the statute, we must separate the initial wrongful act from the plaintiff's injury.[4] It follows that the date on which the City constructed a

---

[4] Consider, for example, the Alabama Supreme Court's decision in *Ramey v. Guyton*, 394 So. 2d 2 (Ala. 1980). In that case, the defendant, a doctor, prescribed birth control pills to the plaintiff. *Id.* at 3. About a year after the plaintiff's visit to the doctor, she suffered a

23

sidewalk without a curb cut has no bearing on the accrual of the cause of action. The focus of our analysis should be on when the plaintiffs actually suffered the denial of access that the text of the ADA prohibits.

In sum, under our general rule for statutes of limitations, a plaintiff's claim does not accrue until he or she has a complete and present cause of action. A plaintiff does not have a complete and present cause of action unless the plaintiff has standing, which in turn requires the plaintiff to suffer an injury in fact. Under Title II of the ADA, a plaintiff does not suffer an injury in fact until he or she suffers actual exclusion from the inaccessible services, programs, or activities. It follows that the statute of limitations did not begin to run in this case until the plaintiffs actually encountered the noncompliant sidewalk or other facility.

## II.

There is no compelling reason to deviate from our general rule for claim accrual in this case. In fact, the policy considerations cut in favor of ruling that the plaintiffs' request for injunctive relief to correct the ADA noncompliance accrues when the plaintiffs actually suffer the injury. In weighing the relevant policies in this case, the majority fails to consider the ADA's "broad mandate" and "sweeping purpose" of eradicating discrimination against disabled people in public accommodations. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 239 (5th Cir. 2005) (discussing the "ADA's broad prohibitions of discrimination in public services and accommodations").

---

stroke, which she claimed stemmed from the doctor's alleged negligent act in prescribing the birth control pills. *Id.* The Alabama Supreme Court ruled that the plaintiff's cause of action accrued on the date of her stroke, not on the date the doctor prescribed the birth control pills. *Id.* As the court stated, "the negligent act and the resultant harm did not coincide. Thus, the accrual date of the cause is delayed to the date when the injury occurred." *Id.* at 4. The same principle holds true here: the date of the wrongful act (improper construction) and the date of the plaintiffs' injury (encountering the inaccessibility) are not the same.

The majority focuses on the policies underlying statutes of limitations, but it wholly ignores both the policies underlying the ADA and the consequences of its decision. Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). With respect to curb cuts—which is the focus of the plaintiffs' complaint—Congress noted that "[t]he employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." H.R. REP. NO. 101-485, at 84 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 367. By cutting off a plaintiff's ability to sue two years after the City completes the construction or alteration, the majority leaves many disabled people with no ability to vindicate their rights. In essence, the City can avoid all liability and maintain noncompliant sidewalks if it successfully avoids a lawsuit for two years after completing the construction or alteration. The City could then have what amount to "illegal" sidewalks in perpetuity. A newly disabled person, or a disabled person who just moves to the City, would have no recourse but to suffer through the ADA violation. This result runs directly counter to the ADA's sweeping remedial purpose. *See PGA Tour, Inc.*, 532 U.S. at 675.

Ruling that the cause of action accrues upon the completion of the construction places upon disabled people an affirmative duty to go out and find all noncompliant sidewalks just after construction or face having to live with sidewalks without curb cuts possibly forever (or at least until the City makes additional improvements or alterations to those sidewalks). As the court in *Voices for Independence* noted, "Defendants would have us place an affirmative burden on disabled persons such as the Plaintiffs to navigate and seek out defective curb cuts far and wide in order to file suit within two years of their installation. Such a result strikes this Court as unduly burdensome and

contrary to the remedial purposes of the statute." 2007 WL 2905887, at *15. Such a duty simply perpetuates the conditions that Congress condemned nineteen years ago when it enacted the ADA. As Congress noted,

> [H]istorically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.

42 U.S.C. § 12101(a)(2).

There are certainly policy considerations that cut the other way. If the court measures the limitations period from the time that any potential plaintiff encounters the ADA violation (i.e., suffers a denial of access), then the City could be subject to liability many years after constructing the sidewalk. Indeed, there would likely be no shortage of plaintiffs seeking to redress the ADA violation, thereby mitigating the effect of any statute of limitations for all practical purposes.

Two key facts, however, temper this concern. First, the City's wrongful conduct causes legal injuries to disabled people every day.[5] Of course, the statute of limitations might run as to any particular plaintiff who does not file suit within two years of encountering a noncompliant sidewalk. A statute of limitations should not, however, cut off a plaintiff's ability to redress a new injury to that plaintiff, even if that new injury originated from prior wrongful conduct. That is, as I discuss above, wrongful conduct does not become actionable until a plaintiff suffers an injury based on that conduct. Thus, the City's policy argument is less convincing because it is essentially asserting that

---

[5] The majority's discussion of the plaintiffs' continuing violation argument is circular. The majority rejects the plaintiffs' continuing violation theory largely based on its resolution of the plaintiffs' accrual argument. But in rejecting the accrual argument, the majority necessarily assumes that the plaintiffs are not suffering injuries each time they encounter a prohibited denial of access. The text of the ADA and the standing issues I discuss above support neither contention. Regardless, given the disposition I advocate, the court need not decide whether the continuing violation doctrine applies in this instance.

if it successfully evades litigation for two years, it is exempt from complying with the ADA altogether, even though disabled people continue to suffer injuries based on the City's wrongful conduct.

Second, the City can avoid all future liability by simply fixing the original unlawful construction. The City is not liable forever; it is responsible only for correcting the deficient construction or alteration.[6] Precisely defining when the injury occurs therefore answers, or at least outweighs, the majority's main policy concerns. The broad remedial goal of the ADA—the eradication of public discrimination against disabled people—therefore supports a ruling that a plaintiff suffers an injury when he or she actually encounters a prohibited denial of access to a public entity's services, programs, or activities.

---

[6] In balancing the consequences of our decision, I recognize that one implication of my analysis is that under the reasoning of the rule I propose, it is possible that a city might be liable for money damages many years after improperly constructing non-ADA compliant facilities. This case does not present that question, however, as the plaintiffs conceded at oral argument that they are seeking only injunctive relief. The court therefore need not reach that issue.

Regardless, monetary damages under the ADA are likely less common than injunctive relief, as they are available only for intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination."). It would require an extraordinary situation to find that a city intentionally discriminated against disabled people by failing to include curb cuts in the sidewalks. The purposes of monetary damages and injunctive relief in the ADA context are thus different: monetary damages compensate an individual plaintiff for a defendant's prior intentional act of discrimination, whereas injunctive relief vindicates the rights of a disabled person stemming from an ongoing injury. *See Texas v. Lesage*, 528 U.S. 18, 22 (1999) (per curiam) (criticizing this court for failing to distinguish between a retrospective claim for damages and a forward-looking claim for injunctive relief). Additionally, although the Supreme Court recently held that a plaintiff can receive monetary damages under the ADA for conduct that violates the Fourteenth Amendment, it left open whether damages are available for Title II violations that do not violate the Constitution. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). It might be that the imposition of monetary damages requires both intentional conduct and a violation of constitutional rights. Accordingly, the class of cases in which money damages will be available for ADA violations is likely quite small, tempering any concerns I might initially have had about a city's ongoing fiscal liability.

27

We must choose between two options, neither of which is ideal. Either we must give stronger credence to the policies behind statutes of limitations, thereby eschewing the broad goals of the ADA, or we must forego the City's desire to strictly cut off its liability to allow disabled people to vindicate their rights. The majority chooses the former; the text of the ADA, the analysis of when a plaintiff actually suffers an injury, and the purposes behind the Act compel me to choose the latter.

## III.

This case presents us with a difficult choice. With immense respect for the majority's position, I think that the better, legally correct, and more pragmatic answer is to allow a plaintiff to bring suit for injunctive relief within two years of his or her injury, that is, within two years of when the plaintiff was unable to access or was deterred from attempting to access a noncompliant sidewalk or other facility. The contrary result countenances a public entity's decision to construct or alter a sidewalk without curb cuts, allowing this ADA violation to go uncorrected forever so long as no one brings suit within two years of the construction or alteration.

Implicit in the majority's decision is an assumption that, most of the time, a plaintiff will exist who can file suit within two years of the City's completion of the construction or alteration. Although that may be true in many situations, it is not always the case. This fact undermines the majority's conclusion, demonstrating the negative consequences stemming from the court's ruling.

Consider the following hypothetical: Suppose that a city is developing an area of town where no one lives. In the initial stages of the development, the city constructs sidewalks but mistakenly fails to include curb cuts. Two years and one month later, the city completes the development and people begin moving in. At that point, a disabled person would suffer an injury based upon his or her inability to access the sidewalks and navigate around the neighborhood. Given

28

that there was no one who could have asserted an ADA claim within two years of the completion of the construction—because a disabled person would not have standing until he or she moves into the development and actually suffers a denial of access—no one would ever be able to sue to seek redress for this clear ADA violation. Such a result does not square with the conception of an "injury" under Title II of the ADA or Congress's goal in enacting this statute. We do not want to foreclose a lawsuit from an individual acting as a "private attorney general" to require the city to *correct* the ADA noncompliance. The city should not be "off the hook" for continued ADA compliance two years after completing the construction merely because there were no possible plaintiffs within that period. Moreover, the city can cut off its liability by simply curing the defect. Thus, carefully defining when the plaintiff suffers an injury for purposes of injunctive relief reconciles the problems inherent in the majority's analysis.

Because the majority's decision is inconsistent with the general rule of claim accrual, the conception of an injury under the text of the ADA for purposes of standing, and the broad goals of the Act, I respectfully dissent.