E. GRADY JOLLY, Circuit Judge:
The plaintiffs are persons with disabilities who depend on motorized wheelchairs for mobility. They allege that the City of Arlington, by failing to make the City’s curbs, sidewalks, and certain parking lots ADA-compliant, has violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act. The district court dismissed their complaint on the basis that their claims were barred by the applicable two-year statute of limitations. This appeal raises more than one issue of first impression — at least for this court. Initially, we must decide whether Title II of the ADA authorizes the plaintiffs’ claims; specifically, whether the City’s curbs, sidewalks, and parking lots constitute a service, program, or activity within the meaning of Title II. Because we decide Title II authorizes the plaintiffs’ claims, we next ask whether those claims are subject to a statute of limitations and, if so, when the claims accrued. We hold that the plaintiffs’ claims are subject to a two-year statute of limitations, and that they accrued upon the City’s completion of any noncom-pliant construction or alteration. We further conclude, however, that it was the City’s burden to prove accrual and expiration of any limitations period. Because the district court erred in requiring the plaintiffs to prove that their claims had not expired, we must remand for further proceedings.
I.
This appeal comes to us from the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We *434 therefore accept the factual allegations of the plaintiffs’ complaint as true. See, e.g., Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir.2008). The plaintiffs filed their complaint in the district court on July 22, 2005, and thereafter amended it three times. Accordingly, for facts we refer to the plaintiffs’ final complaint, as amended.
The plaintiffs are individuals who reside in Arlington who have mobility impairments that require that they use motorized wheelchairs. They point to more than one hundred curbs and poorly maintained sidewalks in Arlington that they allege make their travel impossible or unsafe. They also point to at least three public facilities lacking adequate handicap parking. Count 1 of the plaintiffs’ complaint alleges violations of Title II of the ADA. See Title II of the ADA, 42 U.S.C. §§ 12131 et seq. (prohibiting public entities from discriminating on the basis of disability).[1] Count 2 of the plaintiffs’ complaint alleges violations of Section 504 of the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of disability. See Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The plaintiffs do not seek monetary damages; they only ask for an injunction requiring the City to bring its curbs, sidewalks, and parking lots into ADA compliance.
The City of Arlington moved to dismiss the complaint, asserting three grounds for dismissal; (1) that the claims were barred by the applicable two-year statute of limitations; (2) that the plaintiffs lacked standing to invoke Title II, the ADA Accessibility Guidelines, or Section 504 of the Rehabilitation Act; and (3) that the alleged facts did not state a legal claim of discrimination.
The district court granted the City’s motion on the ground that the plaintiffs’ claims were barred by the applicable two-year statute of limitations. The district court held that the plaintiffs’ claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs’ complaint did not point to dates of noncompliant construction or alteration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs’ claims.
On appeal, the plaintiffs argue that their claims accrued on the date individual plaintiffs encountered a noncompliant barrier— not on the date the City completed a non-compliant construction or alteration. In the alternative, the plaintiffs argue that statutes of limitation do not apply to claims for injunctive relief; that the noncompliant curbs, sidewalks, and parking lots are continuing violations of the ADA that relieve them of the limitations bar; and that dis *435 missal was improper because the City, and not the plaintiffs, had the burden to establish when the plaintiffs’ claims accrued and the limitations period expired.
We consider each of the plaintiffs’ arguments separately. But before we reach the limitations and accrual issues, we resolve whether Title II otherwise authorizes the plaintiffs’ claims.
II.
We review a Rule 12(b)(6) dismissal de novo. See, e.g., Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 386 (5th Cir.2008). “The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff.” Woodard v. Andrus, 419 F.3d 348, 351 (5th Cir.2005) (citing Sloan v. Sharp, 157 F.3d 980, 982 (5th Cir.1998)). The interpretation of a statute is a question of law we also review de novo. See, e.g., Motient Corp. v. Dondero, 529 F.3d 532, 535 (5th Cir.2008).
The immediate question is whether Title II of the ADA authorizes the plaintiffs’ claims, that is, whether the City’s curbs, sidewalks, and parking lots are a service, program, or activity within the meaning of Title II. For reasons we explain, we decide that they are.
The ADA was passed “[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.” 42 U.S.C. § 12101(b)(1).[2] The focus of the instant appeal is on Title II of the ADA, which prohibits public entities from discriminating against individuals on the basis of disability. Title II provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132.
Title II is enforceable through a private cause of action, see, e.g., Barnes v. Gorman, 536 U.S. 181, 184-85, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), and we have held that to make a prima facie case under Title II a plaintiff must show: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir.2004). There is no dispute that the City is a public entity, or that the plaintiffs here have qualifying disabilities.[3] There is, however, a dispute over whether curbs, sidewalks, and parking lots are encompassed within services, programs, or activi *436 ties for which a public entity has liability under Title II.
Title II does not define “services, programs, or activities.” Although we have not decided whether curbs, sidewalks, or parking lots fall within Title II’s coverage, other circuits have interpreted “services, programs, or activities” broadly.
For example, the Ninth Circuit has specifically held that public sidewalks are a service, program, or activity within the meaning of Title II, by reasoning that “services, programs, or activities” can be construed as “ ‘anything a public entity does.’ ” Barden v. City of Sacramento, 292 F.3d 1073, 1076 (9th Cir.2002) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir.2001) (quoting Yeskey v. Pa. Dep’t of Corr., 118 F.3d 168, 171 (3d Cir.1997), aff'd, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998))). The focus of its inquiry, the court wrote, was not on whether a sidewalk can be characterized as a service, program, or activity, but on whether it is “ ‘a normal function of a government entity.’ ” Id. (quoting Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir.1999) (quoting Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44 (2d Cir.1997))). The court concluded that maintaining public sidewalks is “without a doubt something that the [City] ‘does,’ ” and public sidewalks, therefore, fall within the scope of Title II. Id. (quotation marks and citation omitted).
The Sixth Circuit has also broadly held that “the phrase ‘services, programs, or activities’ encompasses virtually everything that a public entity does.” Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir.1998). Although that court has not specifically decided that sidewalks constitute “services, programs, or activities” within the meaning of Title II, it has held that a plaintiff has a private cause of action under Title II to enforce 28 C.F.R. § 35.151, a regulation that establishes accessibility standards for curbs and sidewalks. Ability Ctr. of Greater Toledo, 385 F.3d at 906-07. The plaintiffs in that case complained that the City of Sandusky failed to comply with 28 C.F.R. § 35.151’s accessibility standards when it replaced public curbs and sidewalks. Id. at 903. The court held that the plaintiffs had a private cause of action to enforce 28 C.F.R. § 35.151 because the regulation effectuates a mandate of Title II; Title II, it reasoned, not only prohibits intentional discrimination, but also requires that public entities make certain accommodations in the course of providing public services including, in that case, the maintenance of public sidewalks. Id. at 906-07.
Finally, the Second and Third Circuits have also read “services, programs, or activities” broadly. The Second Circuit has called the language “a catch-all phrase that prohibits all discrimination by a public entity, regardless of context,” and has counseled against “hair-splitting arguments” over what falls within its reach. Innovative Health Sys., 117 F.3d at 45. The Third Circuit has similarly held the language “is intended to apply to anything a public entity does.” Yeskey, 118 F.3d at 171 (quotation marks and citation omitted).
It is not necessary for us to conclude, as the Ninth Circuit did, that Title II's “services, programs, or activities” includes “anything a public entity does.” It is enough for present purposes that we agree that “services, programs, or activities” is at least broad enough to include curbs, sidewalks, and parking lots. Streets and sidewalks, as well as public parking areas, are reasonably understood to be services within the meaning of Title II. Absent a statutory definition or definitive statutory clue, a word “must be given its ordinary, ‘everyday meaning.’ ” See *437 United States v. Hudenbrand, 527 F.3d 466, 476 (5th Cir.2008) (quoting Watson v. United States, 552 U.S. 74, 128 S.Ct. 579, 583, 169 L.Ed.2d 472 (2007)). Among the definitions for “service” is “a facility supplying some public demand.” Merriam-Webster’s Collegiate Dictionary 1137 (11th ed.2003). When, for instance, a public entity provides a sidewalk, or its accompanying curbs, or public parking lots, it provides “a facility supplying some public demand.” Because providing curbs, sidewalks, and parking lots is a service within the ordinary, “everyday meaning” of that word, we hold that those facilities also constitute a “service” within the meaning of Title II.
This understanding is consistent with the legislative history of the ADA, which indicates that Congress envisioned that the ADA would require that local and state governments maintain disability-accessible sidewalks. See H.R.Rep. No. 101-485, pt. 2, at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367 (“The employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets.”). In the light of that legislative intent, along with other circuits’ broad interpretation and our own appreciation of the plain meaning of the word services, we conclude that curbs, sidewalks, and parking lots are “services, programs, or activities” within the meaning of Title II. Accordingly, Title II authorizes the plaintiffs’ claims.
III.
Now we are prepared to address whether the plaintiffs’ claims are nevertheless time-barred. Neither Title II of the ADA nor the Rehabilitation Act provides a limitations period, and the general federal statute of limitations does not apply to either statute.[4] We have previously held that the Texas two-year statute of limitations for personal injury claims applies in Title II cases filed in Texas federal courts. Holmes v. Texas A&M Univ., 145 F.3d 681, 683-84 (5th Cir.1998); Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon Supp. 2007). The district court therefore applied the correct statute of limitations. The plaintiffs argue, however, that the district court erred in ruling their claims accrued, and the statute began to run, on the date the City completed any noncompliant construction or alteration, instead of on the date the plaintiffs encountered a noncom-pliant barrier. The plaintiffs argue in the alternative that the statute of limitations does not apply to their claims because they seek only injunctive relief, and that non-compliant curbs, sidewalks, and parking lots are continuing violations of the ADA that relieve them of the limitations bar. We will first address the plaintiffs’ alternative arguments before we address the issue of accrual. We conclude that neither of the plaintiffs’ alternative arguments succeeds here.
A.
First, we reject the plaintiffs’ assertion that the statute of limitations does not apply to their claims because they seek *438 only injunctive relief. The plaintiffs cite Voices for Independence v. Pennsylvania Department of Transportation, 2007 WL 2905887 (W.D.Pa.), a district court opinion that held a statute of limitations did not apply in an ADA case seeking only equitable relief. Id. at *16-17. That opinion, in addition to being nonbinding, is also unpersuasive in the light of the fact that courts regularly apply statutes of limitation to claims under Title III of the ADA, for which only injunctive relief is available.[5] See, e.g., Gaona v. Town & Country Credit, 324 F.3d 1050, 1054-56 (8th Cir.2003) (applying Minnesota’s six-year statute of limitations to Title III claim for injunctive relief); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1136 n. 2 (9th Cir.2002) (holding ongoing violation brought Title III claim for injunctive relief within California’s one-year limitations period); Sexton v. Otis Coll, of Art & Design Bd. of Directors, 129 F.3d 127, 127 (9th Cir.1997) (applying California’s one-year statute of limitations to Title III claim for injunctive relief); Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir.1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997) (applying Illinois’s two-year statute of limitations to Title III claim for injunctive relief). We ourselves have recently held that statutes of limitations apply to § 1983 actions that seek only injunctive relief. See Walker v. Epps, 550 F.3d 407, 414 (5th Cir.2008). We decline to treat the plaintiffs’ Title II claims differently.
B.
We also reject the plaintiffs’ characterization of noncompliant curbs, sidewalks, and parking lots as continuing violations that bring their claims within the limitations period. The continuing violations doctrine, which typically arises in the context of employment discrimination, relieves a plaintiff of a limitations bar if he can show a series of related acts to him, one or more of which falls within the limitations period. Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir.2004). We hesitate to extend that doctrine here, where the alleged violations are not related. A non-compliant curb, for instance, bears no relation to a noncompliant parking lot on the other side of the City. Furthermore, the concept of a continuing violation plainly is inconsistent with our ultimate holding in this case — which is that the noncompliant construction of a sidewalk constitutes the triggering accrual event for statute of limitations purposes.
In sum, the two-year statute of limitations applies to the plaintiffs’ Title II claims, and the continuing violations doctrine does not.
IV.
We now turn to the crucial issue in this appeal, which also is one of first impression: whether the plaintiffs’ claims accrued on the date the City completed a noncom-pliant construction or alteration, or on the date the plaintiffs encountered a noncom-pliant barrier. The district court held that the plaintiffs’ claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs’ complaint did not allege dates of noncompliant construction or al *439 teration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs’ claims.
For reasons we explain, we agree with the City that the plaintiffs’ claims accrued upon the completion of a noncompliant construction or alteration. However, we agree with the plaintiffs that the City had the burden to prove its affirmative defense that the limitations period had expired with respect to each of the plaintiffs’ claims.
A.
 Although we borrow the statute of limitations for plaintiffs’ Title II claims from state law, federal law governs the claims’ accruals. Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir.1988). A claim ordinarily accrues when a plaintiff has “‘a complete and present cause of action’ ” or, stated differently, “when ‘the plaintiff can file suit and obtain relief.’ ” Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (citations omitted)); Walker, 550 F.3d at 414. A statute may specify an accrual date by “explicit command.” See TRW Inc. v. Andrews, 534 U.S. 19, 27, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). An accrual date may also be implied by “the structure and text of the particular statute.” Id. at 27,122 S.Ct. 441; Disabled in Action of Penn. v. Southeastern Penn. Transp., 539 F.3d 199, 209 (3d Cir.2008) (structure and text of 42 U.S.C. § 12147(a) imply that claims brought under Title II to compel ADA compliance at public transportation facilities accrue upon the completion of alterations to facilities). Title II, however, neither explicitly commands, nor implies, an accrual date for the plaintiffs’ claims.
In the absence of either explicit or implicit statutory guidance, the plaintiffs urge us to apply the discovery rule, under which a claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action. See, e.g., Johnson v. United States, 460 F.3d 616, 621 (5th Cir.2006). Under the discovery rule, the plaintiffs’ claims would have accrued on the date individual plaintiffs encountered a noncompliant curb, sidewalk, or parking lot.
The City urges a rule that instead attaches accrual to the date a noncompliant construction or alteration is complete. That rule focuses on the discriminatory act, instead of discovery of the discriminatory effect. See Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (“the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful” (citing Del. St. Coll. v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980))). The City argues that attaching accrual to an individual plaintiffs discovery effectively would eliminate the applicability of any statute of limitations in like ADA cases, and would therefore subject municipalities to unlimited and continuing liability.
We think the City’s argument is more persuasive. First, we note that there is no default federal discovery rule, and nothing requires that we apply it in this case. The United States Supreme Court has declined to adopt a general federal discovery rule, TRW, Inc., 534 U.S. at 27, 122 S.Ct. 441 (“[Ljower federal courts ‘generally apply a discovery accrual rule when a statute is silent on the issue.’ But we have not adopted that position as our own.” (quotation marks and citations omitted)); see also id. at 37, 122 S.Ct. 441 (Scalia, J., concurring) (“injury-discovery rule” is “bad wine of recent vintage”), and has *440 limited its own use of the discovery rule to cases alleging fraud or medical malpractice. Id. (citing Bailey v. Glover, 21 Wall. 342, 347-50, 22 L.Ed. 636 (1874) (fraud); Urie v. Thompson, 337 U.S. 163, 169-71, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (latent medical injury claims under Federal Employers’ Liability Act); Kubrick, 444 U.S. at 120, 100 S.Ct. 352 (medical malpractice claims under Federal Tort Claims Act)). Of course, what fraud and medical malpractice share in common is the risk that their injuries cannot be discovered until some time after the injurious act has passed. For such latent injuries “the cry for a discovery rule is loudest.” See, e.g., Rotella v. Wood, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). Here, however, the alleged ADA violations are not latent. The fact that a sidewalk does not have a curb cut, for instance, is not hidden, and that an individual plaintiff may not encounter the sidewalk within the limitations period does not somehow make the missing curb cut concealed from potential plaintiffs. See Disabled in Action of Penn., 539 F.3d at 217 n. 16 (expressing hesitation in applying discovery rule to plaintiffs’ Title II claim alleging city’s subway station did not include elevators because there was “nothing latent” about “the fact that newly renovated subway stations do not include elevators”). We therefore think it is inappropriate to apply a discovery rule here.
Second, although it is true that we have applied the discovery rule in ADA cases alleging employment discrimination, see, e.g., Holmes, 145 F.3d at 684; Burfield v. Brown, Moore & Flint, 51 F.3d 583, 589 (5th Cir.1995), the discovery date in those cases coincided with the date of the alleged discriminatory act. In Burfield, for example, we held that the plaintiffs claim accrued on the date he received official notice of termination from his employer. Burfield, 51 F.3d at 589. In Holmes, we held that the plaintiffs claim accrued on the date he first received notice of termination, not on the date his employer later reaffirmed termination. Holmes, 145 F.3d at 684-85. Because the dates of the plaintiffs discovery and of the alleged discriminatory act (termination) were the same, those cases offer no rationale or guidance in the context of our case. Under the facts of those cases, for instance, both the plaintiff and his defendant-employer are aware that the limitations period will commence to run on a definite and singular date; it makes no difference either to the plaintiff or the defendant whether the discovery rule is applied because the result is the same. The discovery rule applied to the facts of this case, however, would forever deny the City a definite limitations period, because every future plaintiffs discovery of a noncompliant sidewalk would reset the limitations clock.
We come to our final point, and that is consideration of the policies underlying statutes of limitations. Statutes of limitations exist to protect defendants against stale claims. See, e.g., Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348-49, 64 S.Ct. 582, 88 L.Ed. 788 (1944) (“The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.”). If the discovery rule were applied in this case, hereafter every new potential plaintiff would constantly retrigger the public entity’s liability for any noncompliant sidewalk, without regard to the publicly known date of its completion. As the City has pointed out, the effect would be an evisceration of the statute of limitations defense in like ADA cases and unlimited exposure to liability. We think the wiser, more reasonable, and — in the words of Order of *441 Railroad Telegraphers — more just approach, is a rule under which a public entity is liable for a noncompliant construction or alteration, but only during a definite and single limitations period.
Accordingly, we hold that the plaintiffs’ claims accrued on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Under this rule, plaintiffs may hold a public entity liable for construction or alterations that do not comply with the ADA, but only within the time period specified by the applicable statute of limitations. This holding, however, is not the end of our analysis.
B.
Finally, we must consider whether outright dismissal of the complaint was improper, which depends upon who had the burden to establish the expiration of the limitations period. As a practical matter, the City, and not the plaintiffs, is in the best position to prove accrual. The plaintiffs could not point to dates of construction or alteration within the two years preceding the complaint’s filing date, July 22, 2005, without having engaged in discovery with the City. Regardless, it is the City’s burden to prove accrual. Under Federal Rule of Civil Procedure 8, the party that asserts an affirmative defense, including the expiration of a limitations period, bears the burden of proof. Fed. R. Civ. P. 8 (“In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ... statute of limitations[.]”); see also In re Hinsley, 201 F.3d 638, 644-45 (5th Cir.2000) (Under Texas law, “[a] party asserting limitations must establish the applicability of the limitations statute, but must, as well, prove when the opponent’s cause of action accrued[.]” (quoting Intermedics, Inc. v. Grady, 683 S.W.2d 842, 845 (Tex.App.1984, writ refused n.r.e.))). The district court erred in burdening the plaintiffs with proving dates of construction or alteration. The district court’s dismissal on the basis that the plaintiffs had not alleged accrual within the two years preceding July 22, 2005, was therefore improper. We therefore must vacate the judgment of dismissal and remand. The City will be required to establish its affirmative defense that the plaintiffs’ claims have expired in a manner consistent with this opinion.
V.
To summarize, we hold that curbs, sidewalks, and parking lots constitute a service, program, or activity within the meaning of Title II of the ADA, and that the plaintiffs have established claims under Title II. Although the district court correctly held both that the plaintiffs’ claims were subject to a two-year statute of limitations, and that they accrued on the date the City completed any noncompliant construction or alteration, it improperly burdened the plaintiffs with proving accrual within the two years preceding the filing of their complaint. We therefore VACATE the district court’s judgment of dismissal and REMAND for such further proceedings not inconsistent with this opinion.
VACATED and REMANDED.

. Count 1 also alleges that the City has violated 28 C.F.R. § 35.150 by failing to implement a plan to transition its curbs, sidewalks, and parking lots to ADA compliance. 28 C.F.R. § 35.150 is a regulation promulgated by the Attorney General which requires that public entities develop transition plans to achieve compliance with Title II. See ADA Accessibility Guidelines, 28 C.F.R. § 35.150(d)(1) (requiring public entities to draft transition plans). The district court dismissed, citing Alexander v. Sandoval, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the plaintiffs' claims under 28 C.F.R. § 35.150 because it concluded the plaintiffs had no private right of action to enforce that regulation. See id. at 291, 121 S.Ct. 1511 (implementing regulation, on its own, cannot create private right of action); see also Iverson v. City of Boston, 452 F.3d 94, 99-100 (1st Cir.2006) (no private right of action to enforce 28 C.F.R. § 35.150); Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 913-15 (6th Cir.2004) (same). The plaintiffs do not appeal that ruling and therefore we do not address it.

. The ADA was modeled after the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of their disability. See 29 U.S.C. § 794 (“No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [fjederal financial assistance.”). The ADA expressly provides that the remedies, procedures, and rights available under the Rehabilitation Act also apply to the ADA, and thus jurisprudence interpreting either statute is applicable to both. Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.2000), cert. denied, 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000). For simplicity’s sake, we refer only to the ADA claim.

. A public entity is "any [sjtate or local government” or "any department, agency, special purpose district, or other instrumentality of a [sjtate or [sjtates or local government.” 42 U.S.C. § 12131. A "disability” under the ADA is "a physical or mental impairment that substantially limits one or more major life activities.” 42 U.S.C. § 12102(1).

. Title II adopts the remedies, procedures, and rights of the Rehabilitation Act. 42 U.S.C. § 12133. The limitations period in Rehabilitation Act cases is governed by 42 U.S.C. § 1988(a). That statute directs courts to apply federal law if it provides a limitations period or, if it does not, apply common law, as modified by state law, if it is not inconsistent with the Constitution or laws of the United States. See, e.g., Holmes v. Texas A&M Univ., 145 F.3d 681, 683-84 (5th Cir.1998) (citing Hickey v. Irving Indep. Sch. Dist., 976 F.2d 980, 982 (5th Cir.1992)). For Tide II claims courts borrow the state statute of limitations from the most analogous state law claim.

. Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000, for which there is only injunctive relief. 42 U.S.C. § 12188(a); Newman v.Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (Title II of the Civil Rights Acts of 1964 provides injunctive relief only).